CITIZENS COMMITTEE TO PRESERVE LAKE LOGAN ET AL.,
APPELLEES, *v.* WILLIAMS, DIRECTOR, ET AL., APPELLANTS.

(No. 77AP-504—Decided December 27, 1977.)

*Messrs. Segreti & Tousey,* for appellees.

*Mr. William J. Brown,* attorney general, *Mr. Joel S. Taylor* and *Ms. Margaret A. Malone,* for Ned E. Williams, director of the Environmental Protection Agency.

*Messrs. Vorys, Sater, Seymour & Pease,* and *Mr. John W. Hoberg,* for Drummond Construction, Inc.

HOLMES, J. This case involves the appeal from findings of fact and a final order of the Ohio Environmental Board of Review (EBR). In that order, the EBR ordered the Director of Environmental Protection to modify the effluent limitations contained in a permit previously issued to the Board of County Commissioners of Hocking County, pursuant to the National Pollutant Discharge Elimination System (NPDES). The order also requires the County Commissioners to terminate the permitted discharge within a certain time period if modifications of their sewage plant are not meeting new effluent limitations ordered by the board. The basic facts giving rise to this appeal are as follows:

In late 1971, or early 1972, Drummond Construction, Inc., investigated the possibility of developing a certain tract of land near Lake Logan as a residential subdivision. In connection with this development, Mr. Drummond discussed the sewage treatment necessary for this subdivision with Mr. Robers, Hocking County Sanitarian, and Mr. Marlow of the Ohio Department of Health, who approved the site as a subdivision. Further discussions were had with Mr. Cottrill, chief engineer of the Southeast District of the Ohio Department of Health, who stated a central sewage system would be required. Mr. Drummond subsequently obtained cost estimates for such a system, purchased the land, and retained an engineering firm to design the central waste water treatment plant. Thereafter, on October 10, 1972, general plans for the subdivision and plant were submitted to Mr. Cottrill.

In February 1973, the Director of Environmental Pro-

tection approved the site of the plant and its discharge into Lake Logan. On July 17, 1974, the Director issued a proposed Permit to Install for the construction of the plant, pursuant to Ohio EPA Regulation EP-30. The permit was modified by the Director in December.

In June 1974, Drummond Construction, Inc., on behalf of the Hocking County Commissioners, who were to own and operate the plan, applied for a National Pollutant Discharge Elimination System (NPDES) permit. In December 1974, the Director proposed that an NPDES permit be issued to the County Commissioners for the plant to be effective March 26, 1975. A public meeting was held in Hocking County on March 25, 1975, regarding the permit and the Director withdrew the proposed permit in order to consider the meeting record. Subsequently, the Director approved the issuance of the permit. The United States Environmental Protection Agency was notified of the intended issuance and the permit was issued in final form June 4, 1975.

On July 2, 1975, the Citizens Committee to Preserve Lake Logan, objecting to the issuance of such permit, filed its notice of appeal with the Environmental Board of Review. Neither Drummond Construction, Inc., the builder, nor the Board of County Commissioners were made parties-appellees to the appeal before the board. Drummond, however, was subsequently granted leave to intervene as an appellee.

On May 27, 1977, the EBR entered findings of fact and final order on its journal which reversed the order of the Director of Environmental Protection, and in effect modified the permit to the extent that any discharge of effluent may not degrade the water below the existing water quality of the receiving waters. Based on this action by the EBR, the Director and Drummond Construction, Inc., thereafter filed this appeal. The Director alleged the following assignments of error:

1. "The Environmental Board of Review erred both in failing to dismiss this appeal for lack of jurisdiction and in issuing an order affecting an NPDES permit is-

sued to the Hocking County Commissioners in a proceeding where the Commissioners were not parties; its order also violates the 14th Amendment to the U. S. Constitution.''

2. ''The Environmental Board of Review erred in interpreting the nondegradation regulation to require that effluent 'match' surface water quality at certain locations on the lake.''

3. ''The Environmental Board of Review erred in determining that the effluent from the sewage treatment plant in question must 'match' the existing water quality in Lake Logan in order to comply with OAC 3745-1-02.''

4. ''The Environmental Board of Review erred in issuing an order which required the Director to modify an. expired NPDES permit.''

5. ''The Environmental Board of Review erred in issuing an order that requires the Director to violate state and federal law governing water pollution control.''

6. ''The Environmental Board of Review erred in issuing the instant order in that it failed to make written findings of the facts upon which such order is based as required by Section 3745.05 of the Revised Code.''

7. ''The Environmental Board of Review erred in basing its decision and order on its determination concerning the Director's actions prior to the issuance of the permit in question rather than on the evidence submitted at the *de novo* hearing held by the EBR.''

8. ''The Environmental Board of Review erred in issuing an enforcement order to permittee upon the apparent assumption that the modified permit would be violated; such an order is beyond the authority of the EBR.''

Drummond Construction, Inc., alleged the following assignments of error:

''1. The Environmental Board of Review erred in failing to dismiss the Appeal from the action of the Director of Environmental Protection for want of jurisdiction.

''2. The Environmental Board of Review erred in finding the Director's Action Unreasonable and unlawful.

''3. The Environmental Board of Review erred in

ruling that effluent limits for dischargees into waters meeting or cleaner than water quality standards must match the quality of the receiving waters.

"4. The Environmental Board of Review erred in finding that the effluent limits to be included in the subject permit should be water quality related effluent limits.

"5. The Orders of the Environmental Board of Review are not supported by reliable, probative and substantial evidence and are not in accordance with law."

At the outset it should be stated that the crux of this case relates to the Director's assignments of error two and four, and Drummond's assignment of error three, which involve the attempt by the Environmental Board of Review to determine Ohio's "nondegradation" law as it relates to the discharge from a "new source" sewage treatment plant into a high quality body of water. After extensive testimony and evidence was taken, the EBR formulated 27 intertwined and complex findings. The board's basic finding and order, however, was that the discharge permit which was issued to the County Commissioners authorized a larger quantity of pollutants to be discharged into Lake Logan than is allowed by law. Nowhere in the board's 27 findings do they state that the law prohibits any discharges into the lake. The board does find, however, in Finding 14, that the effluent discharged into Lake Logan (which contains cleaner water than is required by Ohio EPA Regulation EP-1), "must meet the existing quality of the receiving waters * * *." Therefore, the board's finding was to the effect that "nondegradation" requires that effluent limitations in NPDES permits for discharge into high quality water must match the quality of the receiving waters. It is obvious, therefore, that an analysis of Ohio's "nondegradation" standards is required to determine the correctness of the board's order.

In that Lake Logan is a lake with water of a quality better than Water Quality Standards, and the sewage treatment plant was to be installed pursuant to Regulation EP-30, the Director was required, pursuant to EP 3745-1-04, to

comply with Ohio's nondegradation standards. EP-1-04 states as follows:

"It is the policy of the Ohio EPA that waters whose existing quality is better than these standards as of July 1, 1973, will be maintained at their existing high quality, pursuant to the Ohio Water Pollution Control statutes, so as not to interfere with or become injurious to any assigned uses made of, or presently possible, in such waters. This will require that any industrial, public or private project or development that would constitute a new source of wastewater discharge or an increased wastewater discharge to high quality waters as part of the initial project design, to provide the most effective waste treatment available under existing technology, as provided in the Regulations of Ohio EPA governing installation of new sources of wastewater discharge."

Among the other pertinent regulations with which the Director must adhere in making his determination of whether to issue a permit for the installation and operation of a "new source" sewage treatment facility are the following.

EP 30-05, in part, reads:

"(A) The Director shall not issue a Permit to Install unless on the basis of the information appearing in the application and information gathered by or furnished to the Ohio EPA, he determines that installation or modification and operation of the new source of air pollutants, new source treatment works, or solid waste disposal facility will
* * *

"(3) employ the best available technology; and

"(4) not cause significant degradation of the air or water, if at the time of installation or modification either the ambient air or the receiving water meets or is better than applicable air or water quality standards."

EP 31-04 states, in part: * * *

"(B) Authorized Discharge Levels.

"(1) Final Limitations.

"(a) Except as provided by paragraph (3), for each point source from which pollutants are discharged, the

Director shall determine and specify in the permit the maximum levels of pollutants that may be discharged to insure compliance with * * *

"(i i i) standards which prohibits significant degradation of the waters of the state, if the point source was installed or should have been installed pursuant to a Permit to Install under Chapter EP-30 of the Ohio EPA Regulations, * * *."

Based on these regulations, it is seen that effluent limitations for new sources are based upon "existing technology." As to degradation of the waters then, an applicant must be able to show that he installed the best waste treatment equipment available under existing technology, and, further, that the discharge from the plant will not cause a "significant degradation" of the water. These standards for nondegradation do not require a matching of the receiving water quality. What these regulations seek to achieve is a plan which protects existing and planned uses of waters in the state, while allowing for reasonable industrial and residential development.

The central focus thus becomes whether there was evidence before the board upon which a determination could be made as to whether or not these standards had been complied with. Therefore, a careful examination of the record is essential.

In regard to the design technology used in construction of the plant, Mr. Boothe, who designed the plant, testified that this type of plant was the best waste water system that could be put in. Mr. Boothe further stated that the plant incorporates the best existing applied technology, which is not in the mere experimental stage. Mr. Cottrill, chief of Southeast District of Ohio EPA, testified that the discharge of water pollutants from the sewage plant would not cause any problem with interfering or being injurious to the assigned uses in Lake Logan. On this point a review of the board's finding shows no finding that the technology utilized in this plant would not provide the most effective treatment available under existing technology as required by the regulations. It could have rea-

sonably been concluded by the EBR that the evidence before the board supported the view that this treatment plant does in fact meet the standards required under Ohio law. However, the board made no such findings on this point, and the matter must be remanded to the EBR for an appropriate adjudication hearing, if requested by the parties, and for findings on this issue.

The next inquiry before the EBR should have been in relation to whether the effluent discharge under the final effluent limitations set out in the NPDES permit would cause a "significant degradation" of the waters in Lake Logan. In connection with this, Mr. Cottrill testified that the effluent limits set in the NPDES permit would not violate water quality standards. Mr. Cottrill further testified that if the plant is operated and maintained properly the water quality standards would not be exceeded in respect to dissolved oxygen, suspended solids, or fecal coliform. In addition, he stated that the phosphorus discharge would not cause any over-eutrophication in the lake, since there would not be any significant or excess growth of algae.

Mr. Boothe testified that the concentration of water pollutants from the plant will be smaller than the effluent limitations contained in the NPDES permit. Dr. Hedeen, a professor of biology at Xavier University, testified that in his opinion the effluent being discharged from the plant will increase eutrophication of the lake. However, he went on to say that it is impossible to tell how much it will increase the rate of eutrophication, and that this aging process will occur in any event.

The EBR, in its Finding 26, stated in effect that the discharge from this "new source" plant will cause degradation with reasonable probability. However, we feel that this is not the test, nor the requirement of the regulation. What the Director must determine in the issuance of this permit is whether the operation of this facility of highest available technology will comply with existing water quality standards and, in doing so, not occasion a significant degradation of this high quality water.

Here the evidence before the board on the issue of the degree of degradation of the waters of Lake Logan could have reasonably supported the conclusion that the discharge of the effluents from this plant would be in compliance with the general water quality standards of the state, as set forth in EP 3745-1-02, and would not occasion a significant degradation of Lake Logan, or interfere with the various uses of the lake. However, the EBR did not make its finding using the proper test of "significant degradation." In such respect, the EBR erred, and the matter must be remanded for an appropriate adjudication hearing, if requested by the parties, and for findings on this issue.

At this point, a remand to the EBR being necessary, we feel that it would be timely to further clarify what we believe to be the original appellate procedure of the EBR pursuant to statute. Although upon a *de novo* hearing, pursuant to R. C. 3745.05, the board of review must, of necessity, make factual findings upon the factual issues presented, it is first necessary to define and delimit the factual issues to be determined upon appeal by the board.

As indicated, the factual issue before the board upon appeal herein was not whether the permit should be granted. Rather, the factual issue to be determined was whether the action of the Director in granting the permit was unreasonable or unlawful. This determination is to be made from the totality of the evidence before the board upon the *de novo* hearing.

Where the evidence demonstrates that the action taken (granting the permit) by the Director is reasonable and lawful—that is, the evidence reasonably supports the Director's action—the board must, in accord with R. C. 3745.-05, affirm the Director even though it might have taken different action (denied the permit). The board initially does not stand in place of the Director upon appeal, and is not entitled to substitute its judgment for that of the Director, but is limited to a determination of whether the action taken by the Director is unreasonable or unlawful. Where the evidence demonstrates that it is reasonably de-

batable as to whether the permit should be granted, the board's duty is to affirm the Director, rather than merely to substitute its judgment for his. If the board properly determines the action of the Director to be unreasonable or unlawful, it then possesses power similar to that of the Director, by way of vacating or modifying the action of the Director to implement the appropriate action in accordance with the evidence.

The initial power and duty of the board on appeal is not dissimilar to that of a court in an action seeking to enjoin administrative action. In such an action, the court necessarily conducts a *de novo* hearing so that all pertinent evidence may be adduced. However, a court cannot predicate its decision upon whether it agrees with the action taken by the administrative agency, or would have taken such action, but, rather, is limited to a determination of whether the action taken is unlawful, or constitutes an abuse of discretion under the evidence presented.

"Unlawful" means that which is not in accordance with law. As indicated, the board erroneously found the Director's action to be unlawful by utilizing a nondegradation, rather than a significant degradation standard.

"Unreasonable" means that which is not in accordance with reason, or that which has no factual foundation. It is only where the board can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable. Accordingly, the ultimate factual issue to be determined by the board upon the *de novo* hearing is whether there is a valid factual foundation for the Director's action and not whether the Director's action is the best or most appropriate action, nor whether the board would have taken the same action.

The Director's assignments of error two and three, and Drummond's assignments of error two, three and five are hereby sustained.

As to the Director's assignment of error one, and Drummond's assignment of error one, both taking the position that failing to make the County Commissioners

party-appellees before the EBR was jurisdictional, we must overrule such assignments. The pertinent section involved is R. C. 3745.07, which is, in part, as follows:

"If the director issues, denies, modifies, revokes, or renews a permit, license, or variance without issuing a proposed action, an officer of an agency of the state or of a political subdivision, acting in a representative capacity, or any person who would be aggrieved or adversely affected thereby, may appeal to the environmental board of review, within thirty days of the issuance, denial, modification, revocation, or renewal."

Here the Director issued the permit in question and the appeal was filed within the prescribed thirty days. It seems to be undisputed that the County Commissioners had actual notice of the filing of the appeal, but did not seek joinder.

Joinder could have been accomplished if so desired, but such would have been merely a procedural action, and was not requisite to the proper invoking of the jurisdiction of the EBR.

The Director's assignment of error six alleges that the EBR erred in failing to make written findings of certain facts upon which the board's order is based.

R. C. 3745.05 does require the board to make written findings upon which its orders are based. The findings of fact here are rather extensive, however, as noted, and there were no findings relative to the degree of technology involved in this subject sewage treatment installation, and the degree of degradation it might occasion the waters of Lake Logan. We hold that the board erred, not only as to the absence of these findings, but in their interpretation of the applicable laws and regulations. This assignment of error is therefore sustained.

The remaining assignments of error, numbers four, five, seven and eight, of the Director are hereby overruled.

Drummond's fourth assignment of error is hereby overruled.

For the foregoing reasons, the order of the Board of Review is hereby reversed, and this matter is hereby re-

manded to the EBR for an appropriate adjudication hearing, if desired by the parties, and for findings of fact upon the issues of the degree of technology used in this installation, and upon the issue of whether the discharge from the installation would occasion a significant degradation of the waters of Lake Logan; and for the ultimate finding, in light of all of the evidence adduced, whether the prior action of the Director in issuing the permit was reasonable and lawful.

*Judgment reversed and cause remanded.*

WHITESIDE and McCORMAC, JJ., concur.