**JOHNSON, Trustee, Appellant,**

v.

**KELL, Chief, et al., Appellees.**

[Cite as *Johnson v. Kell* (1993), 89 Ohio App.3d 623.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–480.

Decided July 27, 1993.

*Johnson & Johnson* and *Eric C. Johnson,* for appellant.

*Lee Fisher,* Attorney General, and *Todd M. Musheff,* Assistant Attorney General, for appellee.

*Burkey & Burkey* and *Robert Burkey,* for interested-party appellee, Robert S. Kleese.

CLOSE, Judge.

Appellant, Nils P. Johnson, Sr., Trustee, appeals from the judgment of the Franklin County Court of Common Pleas, affirming a mandatory pooling order granted by the Chief of the Division of Oil and Gas. Appellant raises the following assignments of error:

"I.  The trial court erred when it found that the Oil and Gas Board of Review acted unreasonably and unlawfully.

"II.  The trial court erred in relying upon case law related to EPA statutes and procedures which are vastly different from the statutes governing the case at hand."

Under Ohio law, a drilling permit will not issue unless certain setback, spacing and acreage requirements are met to qualify as a drilling unit. (Cf. Ohio Adm.Code 1501:09–1–04 promulgated in accordance with R.C. 1509.24.) These requirements are designed to protect adjacent landowners from having oil and gas produced through a neighbor's well, as well as to ensure efficient production

by protecting the oil and gas reservoir from having too many wells. These requirements are all stated in terms of *minimum* distances.

Appellee, Robert S. Kleese ("Kleese"), acting through Kleese Development Associates, was unable to satisfy these requirements and, therefore, could not form a "drilling unit." Under R.C. 1509.26 or 1509.27, small tracts of land may be "pooled" together for purposes of forming a drilling unit. After an unsuccessful attempt to voluntarily pool 1.4 acres of appellant's property pursuant to R.C. 1509.26, Kleese filed an application for mandatory pooling under R.C. 1509.27 with the Ohio Department of Natural Resources, Division of Oil and Gas. This application sought to force appellant to join 1.4 acres of his thirteen acres with appellee's property in order to enable appellee to meet the statutory minimums. An oral hearing was held before the Technical Advisory Council on Oil and Gas ("TAC"). The TAC recommended that the Chief of the Division of Oil and Gas ("chief") reject appellee's application for mandatory pooling. The chief, however, granted appellee's application and ordered that 1.4 acres of appellant's property be pooled with appellee's property.

Appellant appealed the chief's order to the Oil and Gas Board of Review. The board, after conducting a hearing *de novo*, vacated the chief's order upon finding it to be unreasonable and unlawful. The board specifically found that appellee's efforts to pool voluntarily were not just and equitable. It found, therefore, that the prerequisite to forced pooling under R.C. 1509.27 was not met. Appellees, Kleese and the chief, appealed the board's decision to the Franklin County Court of Common Pleas. The trial court overruled the board and reinstated the chief's order. The trial court found that the board acted improperly because the chief's order was supported by valid factual evidence that all of the statutory requirements for an R.C. 1509.27 mandatory pooling were met.

■ The proper standard of review on appeal from the Oil and Gas Board of Review is whether the *board's* order was reasonable and lawful. Although the board reviews the chief's order under R.C. 1509.36 to determine whether the *chief's* order was reasonable and lawful in light of the evidence presented to the board during the hearing, the focus on appeal to the court of common pleas is on the board's order, not the chief's. The standard of review, as set forth in R.C. 1509.37, is as follows:

"If the court finds that the order of the *board* appealed from was lawful and reasonable, it shall affirm such order. If the court finds that such order was unreasonable or unlawful, it shall vacate such order and make the order which it finds the *board* should have made. * * *" (Emphasis added.)

This court has previously defined "unlawful" and "unreasonable" in *Citizens Commt. v. Williams* (1977), 56 Ohio App.2d 61, 10 O.O.3d 91, 381 N.E.2d 661.

" 'Unlawful' means that which is not in accordance with law."  " 'Unreasonable' means that which is not in accordance with reason, or that which has no factual foundation." *Id.* at 70, 10 O.O.3d at 96, 381 N.E.2d at 667.  Although *Citizens Committee* dealt with the Environmental Board of Review ("EBR") and its standard of review under R.C. 3745.07, we find the above definitions equally applicable here.

Under R.C. 1509.36, the board is empowered to make new factual determinations by conducting *de novo* hearings.  The trial court apparently focused on the chief's order and failed to give proper deference to the board's findings and conclusions drawn therefrom.  The board's order must be affirmed if it has factual foundation and if it is in accordance with law.

Page's comment to R.C. 1509.27 provides a helpful guideline for determining whether the board's order was lawful and reasonable.  It reads as follows:

"This section [R.C. 1509.27] authorizes mandatory pooling upon application by the *owner* of a *tract of insufficient size or shape* to satisfy applicable spacing requirements *if voluntary pooling is not possible on a just and equitable basis* and if the chief, after hearing or waiver thereof, finds that mandatory pooling is necessary to protect correlative rights or provide effective development, use, or conservation of oil and gas.  The pooling order must comply with the minimum spacing requirements of R.C. §§ 1509.24 or 1509.25.  * * * " (Emphasis added.)

Under R.C. 1509.27, two conditions precedent must be met before an owner may make an application to the Division of Oil and Gas for a mandatory pooling order: (1) the owner's tract of land must be of insufficient size or shape to meet the requirements for drilling a well thereon, as provided in R.C. 1509.24 or 1509.25; and (2) the owner must have been unable to form a drilling unit under a voluntary agreement provided in R.C. 1509.26 on a just and equitable basis.  We hold that the board acted in accordance with law in requiring satisfaction of both of these requirements prior to considering the merits of Kleese's application for pooling.  It is undisputed that the Kleese properties at issue here are of insufficient shape to meet the setback requirements for drilling under R.C. 1509.24.  The board found, however, that the second requirement was not met because Kleese had not attempted to reach a voluntary agreement on a just and equitable basis.

The board supported its conclusion with the following factual foundation. Kleese's proposed well would offset by 1,102 feet an existing profitable well drilled by appellant's family's oil and gas company.  Kleese had only made two offers to appellant.  The original offer was $100 per acre for 1.4 acres pursuant to the terms of a nondrilling oil and gas lease.  This offer was made in a letter dated April 17, 1989, after Kleese had leased or pooled additional adjacent properties.

The second offer was a total of $2,000 for 1.4 acres pursuant to a nondrilling oil and gas lease. The board found these offers unreasonable based upon its earlier decision. The board held in an earlier decision that the more a proposed well approaches being an "offset well," the more the value of the offer must increase in order to constitute a just and equitable pooling agreement. The board noted that Kleese did not offer to pool appellant's entire thirteen acres prior to the issuance of the chief's order. Kleese's two offers, therefore, limited appellant's share of the royalties to a small percentage, as no other offer to participate was made. Further, the offer did not adequately compensate appellant for the likely adverse impact on his existing well.

The above factual findings support the board's conclusion that Kleese's attempts to pool voluntarily were not conducted on a just and equitable basis. It was error, therefore, for the trial court to conclude that the board's order was unlawful and unreasonable.

■ The trial court held that the board substituted its judgment for that of the chief. In so holding, the trial court relied on *Northeast Ohio Regional Sewer Dist. v. Shank* (1991), 58 Ohio St.3d 16, 567 N.E.2d 993. However, the board is given wide latitude in admitting new evidence and, therefore, in making new factual determinations. The Ohio Supreme Court in *Northeast Ohio Regional Sewer Dist.* dealt with the EBR and explained the significance of the EBR's *de novo* hearings on appeal. The court specifically stated that "[i]n a *de novo* hearing the EBR has a wide degree of latitude as to the evidence presented at the hearing." *Id.* at 25, 567 N.E.2d at 1001. We hold that R.C. 1509.36 gives the board the same degree of latitude.

Even aside from this added flexibility, the board found that the chief's order was unlawful and unreasonable because Kleese had not established a condition precedent to the filing of his application for mandatory pooling. Kleese had not established that he tried to pool voluntarily on a just and equitable basis.

■ We note that, even if appellee had established the prerequisite "just and equitable" attempt to voluntarily pool, he did not present any valid factual evidence showing that the forced pooling adequately protected appellant's correlative rights or provided effective development, use or conservation of oil and gas. Mandatory pooling is authorized under R.C. 1509.27 where, after an unsuccessful attempt to voluntarily pool on a just and equitable basis, forced pooling is necessary to protect correlative rights or to provide effective development, use or conservation of oil and gas. Appellee failed to consider appellant's correlative rights in light of the fact that appellant would be an adversely affected, forced participant.

R.C. 1509.01(I) defines "correlative rights" as:

"[T]he reasonable opportunity to *every* person entitled thereto to recover and receive the oil and gas in and under his tract or tracts, or the equivalent thereof, without having to drill unnecessary wells or incur other unnecessary expense." (Emphasis added.)

The chief must find that mandatory pooling is necessary to protect *every* participating landowner's correlative rights, not just those who voluntarily pool. The impact on the unwilling participant who would be forced to pool must be taken into account.

■ Appellee argues that appellant's correlative rights are satisfied by virtue of the fact that he would be compensated with royalty payments at the standard industry rate of one-eighth of the production of oil and gas associated with his proportionate share of property included in the drilling unit, and that he would eventually recover an additional seven-eighths of the oil and gas production associated with his 1.4 acres. That appellant would be fully compensated in proportion to his participation is not sufficient to protect his correlative rights. It does not account for the impact on his existing well or the impact on his remaining property, which is not included in the proposed drilling unit. If this standard rate of compensation was sufficient to protect every participating landowner's correlative rights, then every mandatory pooling application would be justified after voluntary, just and equitable pooling agreements have failed.

We hold that a valid factual finding regarding correlative rights must take into account the impact on the forced participant. The economic impact on appellant in this case could be significant. Appellant purchased the thirteen-acre tract at a premium for $93,000 in anticipation of developing his oil and gas rights. The forced pooling of his 1.4 acres would severely restrict the development of his remaining 11.6 acres, while only compensating him with royalties associated with the 1.4 acres. Furthermore, the proposed well would offset appellant's existing well. Appellant would likely suffer loss due to depletion or other reduction in the productivity of the oil and gas reservoir from which he is currently drilling.

The board, therefore, properly found the chief's order unlawful and unreasonable because there was no valid factual finding that the prerequisite condition was met or that appellant's correlative rights would be protected. Appellant's first assignment of error is sustained.

In his second assignment of error, appellant alleges that the trial court erred in relying upon case law related to EPA statutes and procedures. Although the case law involving the EPA and the EBR is unrelated and, therefore, nonbinding here, we may properly find it persuasive where it is consistent with the purposes of R.C. Chapter 1509 and the regulations promulgated thereunder. However, having determined that the board's order was in accordance with law and is

supported by valid, factual evidence, it is not necessary to address the trial court's specific application of case law involving the EPA and EBR. Appellant's second assignment of error is overruled.

Appellant's first assignment of error is sustained, and appellant's second assignment of error is overruled. The judgment of the trial court is reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, P.J., and WHITESIDE, J., concur.