DECISION
Appellant, the Ohio State Department of Natural Resources, Division of Mineral Resources Management (f/k/a the Division of Oil and Gas; hereinafter "the division"), appeals from a judgment of the Franklin County Court of Common Pleas vacating a prior decision of the Oil and Gas Commission ("the commission"), which had ordered appellee, Barclay Petroleum, Inc. ("Barclay"), to assume responsibility for plugging an unused oil well.
The property in question is known as Harper Well #1, located in Jackson Township, Vinton County, Ohio. On October 1, 1997, the chief of the division issued an order, pursuant to R.C. 1509.03, finding Barclay to be the owner of record, as defined in R.C. 1509.01, for Harper Well #1, and further finding that the well was incapable of producing oil or gas in commercial quantities. Under the chief's order, Barclay, as the owner of record, was required to either place the well into production, or have it "properly plugged and abandoned pursuant to [R.C. 1509.12]."
Barclay appealed the chief's order to the commission. After a hearing, at which the parties presented evidence and witnesses, the commission rendered a decision affirming the chief's order. Among the findings of fact set forth in the commission's order were that Barclay had submitted a signed Request for Change of Owner ("Form 7") signed by its president, Mr. Bruce Kelley, attesting that Barclay was the owner of the well and had the right to appropriate oil and gas produced from the well. The commission further found that the transfer of Harper Well #1 to Barclay took place on January 29, 1991, as recorded by the division, and that no subsequent transfer had been filed with the division since. The commission thus concluded that Barclay was the record owner of the well for purposes of regulation by the division. Finally, the commission found that Barclay had never consistently operated the well, although it had prepared the well for production and briefly pumped the well to determine if it was productive. An inspection by the division had revealed that the flow line between the well and storage tank was broken, no sales meter was placed on the well, and the well was not being used for domestic purposes.
Based upon these factual findings, the commission determined, under its conclusions of law, that Barclay was the "owner" of Harper Well #1, as defined in R.C. 1509.01(K), and that Barclay was thus responsible under R.C. 1509.12 for plugging the well once it became incapable of producing oil or gas in commercial quantities. The commission accordingly concluded that the chief's order that Barclay plug the well was not unlawful or unreasonable, and affirmed the chief's order.
Barclay thereafter appealed the commission's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12.
The court of common pleas determined on appeal that the order of the commission was not reasonable and lawful, and vacated the commission's order. The court of common pleas based its decision on multiple grounds. First, the court determined that the statutory requirements for processing a Form 7 had not been met, because the Form 7 submitted in 1991 for Harper Well #1 was not accompanied by a true copy of the assignment of lease or bill of sale for the well, despite the fact that, on the Form 7 itself, it is explicitly stated that: "THIS REQUEST MUST BE ACCOMPANIED BY A TRUE COPY OF THE ASSIGNMENT OF LEASE OR THE BILL OF SALE." The court also noted that the section of the form set aside for the notarized statement by the prior owner or transferor was left blank and, although the form stated the name of the last operator of the well, a Mr. Nicholas Ross, as transferor, the form did not contain his signature, only that of Mr. Kelley on behalf of Barclay as transferee. The court concluded that the Form 7 submitted on behalf of Barclay was incomplete and ineffective to effect the transfer of Harper Well #1 to Barclay.
In addition, the court of common pleas found that the Form 7 had been submitted in 1991 by an attorney, Mr. Ray Michalski, who was retained by other parties to the transaction and purported to submit the application for transfer on behalf of Barclay, but, in fact, acted without Barclay's consent. The court noted that it was uncontroverted that attorney Michalski had been specifically instructed by Mr. Kelley for Barclay that a transfer should not be effected until an operating agreement for the well had been obtained by Barclay from the parties holding an oil and gas lease granted by the landowners, and that, in fact, no such agreement had ever been obtained by Barclay. The court also noted testimony that, several months after the transfer, when Barclay became aware that the well had been put in its name, Barclay contacted attorney Michalski and repeatedly demanded that the well be taken out of Barclay's name, insisting that the transfer should not have taken place. The court thus concluded that the application for transfer of Harper Well #1 to Barclay had been submitted by an agent for Barclay acting outside the scope of his authority and was "a nullity."
Finally, the court concluded that the entire procedure by which the division processed the incomplete and improperly submitted Form 7 violated Barclay's constitutional right to due process, based upon a lack of notice and opportunity to be heard.
The court of common pleas thus concluded in sum that the transfer of Harper Well #1 to Barclay was procedurally defective, that Barclay had never intended to submit the application at all, that the improper processing amounted to a violation of Barclay's constitutional rights, and that the transfer to Barclay should not be given effect to make Barclay liable for plugging the unproductive well.
The Ohio Department of Natural Resources has timely appealed and brings the following assignment of error:
 THE COMMON PLEAS COURT ERRED AND ABUSED ITS DISCRETION WHEN IT HELD THAT THE DECISION OF THE OIL AND GAS COMMISSION WAS UNLAWFUL AND UNREASONABLE BECAUSE THE COMMISSION, IN AFFIRMING THE ORDER OF THE CHIEF OF THE DIVISION OF OIL AND GAS, CORRECTLY DETERMINED THAT BARCLAY BECAME THE "OWNER" OF THE HARPER WELL #1 AS DEFINED IN R.C. 1509.01(K) AND IS RESPONSIBLE FOR PLUGGING THE WELL.
Initially, we note that the standard of review for the court of common pleas on appeal from the Oil and Gas Commission is whether the commission's order was reasonable and lawful. Johnson v. Kell (1993),89 Ohio App.3d 623, 625. In Johnson, this court based its standard of review on R.C. 1509.37, which provides that, "`if the court finds that the order of the board appealed from was lawful and reasonable, it shall affirm such order. If the court finds that such order was unreasonable or unlawful, it shall vacate such order and make the order which it finds the board should have made."' (Emphasis sic.) "Unlawful" is defined as that which is not in accordance with law, while "unreasonable" is defined as that which is not in accordance with reason or that which has no factual foundation. Johnson, at 626, citing Citizens Commt. v. Williams
(1977), 56 Ohio App.2d 61, 70.
Upon appeal to this court from the court of common pleas, however, our standard of review is more restrictive:
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. * * * The appellate court is to determine only if the trial court has abused its discretion. * * *
Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261. The term "abuse of discretion" connotes more than a mere error of judgment, but, rather, signifies that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
As set forth above, the court of common pleas concluded that Barclay had never become the record owner of Harper Well #1 because the pertinent form was submitted without Barclay's authorization, the form itself was deficient or incomplete in several respects, and that the aggregate result of the actions of the division in processing the application for change of ownership amounted to a violation of Barclay's constitutional right to due process.
We will first address the court of common pleas' conclusion that Barclay has suffered a constitutional deprivation in the present case. In doing so, we leave for later discussion the question of whether the Form 7 was improperly submitted by an agent acting outside the scope of his authority, or was defective on its face, since these questions do not address the constitutionality of the process, but the propriety and efficiency of its implementation by the division. We therefore examine the issue from the point of view of the constitutionality of the division acting on a properly submitted Form 7 without providing additional notice and opportunity for a hearing to the party requesting the change of ownership. R.C. 1509.03 provides:
 Any order issuing, denying, or modifying a permit or notices required to be made by the chief pursuant to Chapter 1509. of the Revised Code shall be made in compliance with the provisions of sections 119.01 to 119.13 of the Revised Code * * *. Every order issuing, denying, or modifying a permit under Chapter 1509. of the Revised Code and described as such shall be considered an adjudication order for purposes of sections 119.01 to 119.13 of the Revised Code.
Appellant stresses that R.C. 119.01(D) provides that the definition of an "adjudicatory action," with its concomitant due process guarantees, "does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature." Appellant accordingly cites State ex rel. DelawareCty. Amphitheater Action Commt. v. Ohio Dept. of Liquor Control (1994),94 Ohio App.3d 680, in which this court stated that the transfer of a license (in the instance, a liquor permit) was largely a ministerial or administrative function, and that such ministerial acts do not constitute the exercise of quasi-judicial authority. Id. at 682.
Furthermore, the language of R.C. 1509.06, setting forth the procedure to be followed in an application for an oil and gas permit, provides that "the chief shall issue a permit within seven days of the filing of the request unless he denies the application by order." R.C. 1509.06(N). The legislature clearly contemplated that issuance of a permit would be a relatively straightforward ministerial act, rapidly executed, pursuant to an application undertaken by the party seeking the permit. Under these conditions, right to notice to the parties having initiated the procedure seems superfluous, and a right to a hearing seems unnecessary, given the ministerial nature of the act and the fact that it was undertaken upon the request of the applicant. Transfer of an existing permit to operate a well upon application of the transferee would be, if anything, more conclusively a ministerial act.
Moreover, even if the blanket language of R.C. 1509.03 is taken to make an order transferring a permit, pursuant to R.C. 1509.31, an adjudicatory act amounting to quasi-judicial authority under R.C. 119.01 et seq., with concomitant due process rights to notice and hearing prior to issuance of the order, it remains difficult to find any constitutional deprivation suffered by Barclay, in its position as purported applicant for a permit transfer. Again, we consider the issue of whether the Form 7 was submitted by an agent with proper authority, and whether the form was appropriately completed, to be separate from the constitutional propriety of the procedures following in processing the application under pertinent statutes and regulations thereafter.
Due process requires, at a minimum, notice of the administrative action to be taken and a meaningful opportunity to be heard in connection therewith under the Fourteenth Amendment to the United States Constitution and Section 15, Article I, Ohio Constitution. Korn v. OhioState Med. Bd. (1988), 61 Ohio App.3d 677, 684. These safeguards are required before deprival of a significant property interest.
The present case is somewhat novel, in that the property interest alleged is the right not to be saddled with record ownership of an undesired oil well; that is, it is the reversal of the usual situation in which a party is deprived of a present ownership in property or a license. Nonetheless, it is difficult to find any lack of notice or opportunity to be meaningfully heard when the division's action in processing the Form 7 application for change of ownership was undertaken at the (apparent) request of the applicant. Given the seven-day statutory requirement to approve such a transfer and the apparent voluntary nature of the transaction initiated by the transferee, it is difficult to ascertain how, in the normal course of such transactions, a mandatory hearing (at which the applicant would presumably restate its desire to effect the requested transfer) would provide any additional guarantee of due process to the actions of the division in approving the transfer. Accepting entirely appellant's version of the facts and, thus, accepting that the application was both submitted to the division without proper authority, and erroneously processed by the division due to various defects on the face of the Form 7, these facts of themselves do not rise to the level of a constitutional deprivation. These circumstances represent, at most, ministerial processes, and, thus, at worst, ministerial blunders on the part of the division. Barclay had a right to appeal the alleged erroneous transfer under R.C. 1509.03 and R.C. Chapter 119 and chose not to, thus declining to avail itself of due process safeguards that were both applicable and appropriate. We therefore do not find that the actions of the division in the present case raise constitutional questions, and conclude that the court of common pleas erred in so finding.
Turning to the question of whether transferring record ownership to Barclay was procedurally proper, we will again assume, arguendo, that Barclay's description of the submission of the Form 7 is factually accurate: that the form was submitted by an attorney for the transferors, functioning outside the scope of any consent or authority granted by Barclay, and without either the required signature of the transferor, or an attached assignment of lease. The question, therefore, becomes whether Barclay's actions, after it learned of the transfer, are sufficient to constitute a ratification of the unauthorized acts of attorney Michalski, and a waiver to any defect in the Form 7, through acceptance of the benefits, and consequently the burdens, of record ownership of the well. In addition, we must examine the question of whether Barclay is judicially estopped from denying record ownership of the well through its actions in prior litigation concerning the well.
 Ratification can be found in conduct of the principal, with full knowledge of the facts of the transaction, which either expressly manifests its intention to be bound by the acts of its agent or is inconsistent with an intention to repudiate the transaction entered by the agent. 1 Restatement of Agency 2d 212, Section 83 (1958); Meyer v. Klensch (1961), 114 Ohio App. 4. Such conduct by the principal can, for example, be the bringing of an action based upon the transaction, the retention of the benefits of the transaction, or even the failure to repudiate the transaction under circumstances where the principal would naturally be expected to assert his position.
Developers Three v. Nationwide Ins. Co. (Jan. 15, 1985), Franklin App. No. 83AP-476, unreported. "The doctrine of judicial estoppel prevents a party from staking out a position in a subsequent action that is inconsistent with a position taken in a prior action." Scioto Mem.Hosp. Assn., Inc. v. Waterhouse (1996), 74 Ohio St.3d 474, 481 (Douglas, J., concurring); Bruck Mfg. Co. v. Mason (1992), 84 Ohio App.3d 398. In the recent case of Hilliard v. Lease (Jan. 16, 1996), Franklin App. No. 95APE04-473, unreported (1996 Ohio App. LEXIS 113), this court adopted the proposition set forth in Bruck as well as a Sixth Circuit decision stating that the doctrine of judicial estoppel may only be applied where the party making the inconsistent assertion was successful with the prior assertion. Hilliard, citing Coal Resources, Inc. v. Gulf WesternIndustries, Inc. (C.A.6, 1989), 865 F.2d 761.
The record establishes that Barclay, although it protested to attorney Michalski after learning of the transfer of the well into its name, did not at that time extend notice of its disavowal of the alleged transfer to the division in an attempt to rectify the situation. Barclay also undertook to establish the commercial viability of Harper Well #1 by effecting repairs on at least two occasions, and briefly pumping the well to ascertain whether it was capable of producing in commercial quantities. Thereafter, Barclay accepted, albeit reluctantly, responsibility for cleaning up an oil spill that had occurred at the site. Barclay subsequently commenced litigation to recover the costs of the cleanup from the landowners and, in the process, asserted before the court that Barclay was, in fact, the record owner of the well. BarclayPetroleum, Inc. v. Harper (Mar. 20, 1996), Vinton C.P. No. 93CV6-31, unreported. While Barclay apparently did attempt to qualify its ownership as somewhat involuntary based upon the same issues raised before this court, it is apparent that recovery in the Vinton County case was predicated upon such record ownership. Mr. Kelley himself testified before the commission that he had, on multiple occasions, personally represented to Mead Corporation, a defendant in the Vinton County case and the current landowner of the property upon which the well was located, that Barclay was the record owner of the well. The decision of the Vinton County court reflects that Barclay prevailed in this assertion and recovered from the prior landowners some of the cleanup costs associated with the spill at Harper Well #1.
It is therefore apparent that, regardless of any irregularities in the submission of the Form 7 by attorney Michalski and subsequent transfer of the permit by the division, Barclay thereafter held itself out under various circumstances, including some giving rise to a judicial estoppel, as the record owner of the well for regulatory purposes, and, thus, ratified the unauthorized actions of attorney Michalski. Barclay attempted to capture the benefits of well ownership by ascertaining whether the well could produce in commercial quantities. It would be inconsistent to allow Barclay, under these conditions, to now escape the burdens of ownership through avoiding its statutory duty to plug the nonproducing well at the direction of the division. Upon examination of the facts in the record and the applicable law, we find that the decision of the Oil and Gas Commission was reasonable and lawful, and that the court of common pleas abused its discretion in vacating that decision. We accordingly sustain appellant's assignment of error, reverse the decision of the Franklin County Court of Common Pleas which vacated the decision of the commission, and reinstate the commission's decision.
 ___________ DESHLER, J.
BOWMAN and LAZARUS, JJ., concur.