OPINION
{¶ 1} This is an appeal by appellant, Eugene Martz, from a judgment of the Franklin County Court of Common Pleas, affirming an order of the Ohio Oil and Gas Commission ("commission") which affirmed a mandatory pooling order granted by appellee, Division of Mineral Resources Management ("division"). *Page 2 
 {¶ 2} Unizan Financial Services Group ("Unizan") is the trustee of the Glenn L. Martz Trust ("the Martz trust"). As trustee of the Martz trust, Unizan acquired an interest in property consisting of approximately 39 acres in Lake Township, Stark County. On June 23, 2003, Unizan entered into a lease agreement with Excalibur Exploration, Inc. ("Excalibur") for the exploration of oil and gas, for a primary term of five years. Excalibur applied for a permit to drill an oil well, to be known as the "Martz Unit #1 Well" (hereafter "the Martz well"). Excalibur also entered into voluntary lease agreements with five separate landowners to establish a drilling unit for the well.
 {¶ 3} On September 17, 2003, appellant and his wife purchased the 39-acre property from the Martz trust; the interest was transferred by deed, and the conveyance was subject to the oil and gas lease from the Martz trust to Excalibur, dated June 23, 2003. The Martz well was to be located on the 39-acre property owned by appellant. Appellant also owns a separate 2.02 acre parcel of land adjacent to the 39-acre property.
 {¶ 4} Excalibur's drilling unit was of insufficient size to meet the spacing requirements under R.C. 1509.24, which required a 40 acre drilling unit for a well of the depth proposed. On December 6, 2005, Excalibur sent a letter to the Village of Hartville ("the Village"), requesting that the Village sign a non-drilling, non-trespassing oil and gas lease for 3.51 acres owned by the Village. Alternatively, Excalibur requested that the Village voluntarily pool its oil and gas interests into the Martz well. On December 20, 2005, the Hartville Village Council signed a resolution stating that the Village had declined to enter into an oil and gas lease with any private company.
 {¶ 5} On March 16, 2006, Excalibur filed an application with the division for a mandatory pooling order pursuant to R.C. 1509.27. On May 16, 2006, a hearing was *Page 3 
held before the Technical Advisory Council on Oil and Gas ("TAC"). Representatives for the Village, as well as counsel for appellant, attended and participated in the hearing. Following the hearing, the TAC recommended that the application be denied, and that other well locations and unit dimensions be considered.
 {¶ 6} On August 29, 2006, the chief of the division issued an order that mandatory pooling be established for the drilling unit requirements for the Martz well. On September 26, 2006, appellant filed an appeal with the commission from the division chief's order; on October 5, 2006, the Village also filed an appeal from that order. On October 20, 2006, Excalibur filed a request to intervene, which the commission granted.
 {¶ 7} On November 8, 2006, the division filed a motion to dismiss appellant's appeal on the ground that appellant lacked standing. On November 16, 2006, the commission issued an order denying the division's motion to dismiss. The commission consolidated appellant's appeal with the appeal filed by the Village, and the commission conducted a hearing on the consolidated appeals on December 11, 2006.
 {¶ 8} On January 2, 2007, the commission issued an order finding that the division chief's order mandating the pooling of 3.51 acres of land owned by the Village into the Martz well was not unlawful or unreasonable. In its conclusions of law, the commission found that Excalibur attempted, unsuccessfully, to obtain a voluntary oil and gas lease for the Village's 3.51-acre property; further, that Excalibur also attempted, unsuccessfully, to obtain a voluntary lease of appellant's 2.02-acre property which, if included in the drilling unit, would have allowed the drilling unit to be reconfigured to meet size and spacing requirements. The commission found that Excalibur's dealings with the Village and appellant were "just and equitable," and that the mandatory pooling order *Page 4 
related to the Martz well "is necessary to protect correlative rights and is necessary to provide effective development, use or conservation" of oil and gas.
 {¶ 9} On January 9, 2007, appellant filed an appeal with the trial court from the order of the commission affirming the division's mandatory pooling order. In its brief before the trial court, appellant argued that Excalibur's application for the drilling permit was deficient under R.C. 1509.06, and that Excalibur could have formed a voluntary drilling unit on a just and equitable basis without having to resort to mandatory pooling.
 {¶ 10} By decision filed on November 13, 2007, the trial court affirmed the order of the commission. The decision of the trial court was journalized by judgment entry filed December 12, 2007.
 {¶ 11} On appeal, appellant sets forth the following assignment of error for this court's review:
 The Court of Common Pleas committed reversible error by finding that Excalibur's failure to comply with the mandatory requirements of O.R.C. § 1509.06(A)(3) did not mandate reversal of the Oil and Gas Commission's decision and reversal of Appellee's Order 2006-116.
 {¶ 12} Under his single assignment of error, appellant argues that the trial court erred in failing to reverse the commission's order affirming the division's approval of Excalibur's application for mandatory pooling where, it is asserted, Excalibur failed to comply with the mandatory requirements of R.C. 1509.06. Appellant argues that Excalibur's permit application was in contravention of the statute because it erroneously listed Unizan, the trustee of the Martz trust, as the owner of the royalty interests rather than appellant. Appellant argues that Excalibur was made aware of the fact the application was incorrect at the TAC hearing on May 16, 2006, but made no effort to *Page 5 
correct its pending permit application. Appellant maintains that the division's subsequent order, finding the application to be "proper in form," was unlawful.
 {¶ 13} In Barclay Petroleum, Inc. v. Ohio Dept. of NaturalResources (Mar. 13, 2001), Franklin App. No. 00AP-592, this court discussed the applicable standards of review for a court of common pleas and an appellate court from an order of the commission as follows:
 * * * [T]he standard of review for the court of common pleas on appeal from the Oil and Gas Commission is whether the commission's order was reasonable and lawful. Johnson v. Kell (1993), 89 Ohio App.3d 623, 625, 626 N.E.2d 1002. In Johnson, this court based its standard of review on R.C. 1509.37, which provides that, "`if the court finds that the order of the board appealed from was lawful and reasonable, it shall affirm such order. If the court finds that such order was unreasonable or unlawful, it shall vacate such order and make the order which it finds the board should have made.'" (Emphasis sic.) "Unlawful" is defined as that which is not in accordance with law, while "unreasonable" is defined as that which is not in accordance with reason or that which has no factual foundation. Johnson, at 626, citing Citizens Commt. v. Williams (1977), 56 Ohio App.2d 61, 70, 381 N.E.2d 661.
 Upon appeal to this court from the court of common pleas, however, our standard of review is more restrictive:
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. * * * The appellate court is to determine only if the trial court has abused its discretion. * * *
 Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264. The term "abuse of discretion" connotes more than a mere error of judgment, but, rather, signifies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. *Page 6 
 {¶ 14} While, in general, an appellate court determines whether the trial court abused its discretion in reviewing an administrative agency's order, an appellate court's review is plenary on questions of law. Serv. Emp. Internatl. Union Dist. 1199 v. Ohio ElectionsComm., 158 Ohio App.3d 769, 2004-Ohio-5562, at ¶ 15. See, also,Gemini Energy, Inc. v. Div. of Mineral Resources Mgt., Franklin App. No. 06AP-633, 2007-Ohio-5091, at ¶ 9.
 {¶ 15} Under Ohio's statutory scheme, "R.C. 1509.26 allows for voluntary pooling agreements to form drilling units which conform to the minimum acreage and distance requirements." Burtner-Morgan-Stephens, Co.v. Wilson (1992), 63 Ohio St.3d 257, 259. However, in the event that an owner is unable to secure a voluntary pooling agreement, R.C. 1509.27
allows for "mandatory orders from the Chief of the Division of Oil and Gas." Id. See, also, Karas v. Ohio (Sept. 11, 1979), Franklin App. No. 79AP-37 ("Mandatory pooling orders are authorized by R.C. 1509.27 and give an owner of a tract of land the right to apply for a mandatory pooling order if his tract of land is of insufficient size or shape to meet statutory requirements and if said owner has been unable to form a drilling unit under an agreement, as provided in R.C. 1509.26, on a just and reasonable basis").
 {¶ 16} Appellant does not challenge on appeal the trial court's determinations that the record supports the commission's finding that Excalibur's efforts to pool voluntarily were "just and equitable," and that mandatory pooling was necessary to protect correlative rights and to provide effective development, use or conservation of oil and gas. Rather, appellant's sole contention is that the trial court erred in holding that Excalibur's failure to list appellant on the permit application as an owner of royalty rights did not mandate reversal of the commission's order. *Page 7 
 {¶ 17} R.C. 1509.27 provides in part that an application for a mandatory pooling order "shall be accompanied by an application for permit." R.C. 1509.06(A)(3) states in relevant part:
 (A) An application for a permit to drill a new well, drill an existing well deeper, reopen a well, convert a well to any use other than its original purpose, or plug back a well to a different source of supply shall be filed with the chief of the division of mineral resources management upon such form as the chief prescribes and shall contain each of the following that is applicable:
 * * *
 (3) The names and addresses of all persons holding the royalty interest in the tract upon which the well is located or is to be drilled or within a proposed drilling unit[.]
 {¶ 18} According to appellant, the use of the word "shall" in R.C. 1509.06(A) means that Excalibur's failure to list appellant as the holder of the royalty interest cannot be excused, therefore requiring reversal of the trial court's decision. In response, the division maintains that Excalibur did comply with the statute by listing the party it believed to be the holder of the royalty interest (Unizan) at the time of the submission of the application. The division argues that the issue as to whether the correct holder of royalty interests was listed did not arise until after Excalibur's submission of the permit application. The division further maintains that the chief is not required by law to deny a permit application due to errors in the information provided by the applicant.
 {¶ 19} At the outset, we note that the record indicates conflicting evidence was presented during the administrative proceedings regarding the ownership of the royalty rights. The issue appears to have first arisen at the meeting before the TAC on May 16, 2006. Specifically, during that meeting, counsel for appellant represented that appellant *Page 8 
owned the subject 39-acre property, and that appellant's ownership encompassed both the surface and mineral rights. According to counsel for appellant, the deed from the Martz trust to appellant was "subject to the lease but does not reserve any rights under the lease." (May 16, 2006 TAC hearing, at 6.) A representative for Excalibur, however, stated during the hearing that the intent was to protect the interests of the various beneficiaries of the Martz trust so that "all the other members of the trust would also get a share of the minerals." (May 16, 2006 TAC hearing, at 6.) In response, counsel for appellant stated: "If there is a question between who gets the royalties the trust or Mr. Martz we will deal with that." (May 16, 2006 TAC hearing, at 6.)
 {¶ 20} At the time Excalibur filed a motion with the commission to intervene, Excalibur submitted various exhibits, including the affidavit of Philip L. Francis, a trust officer with Huntington National Bank, the successor by merger to Unizan. In the affidavit, Francis averred that the intent was Unizan "would retain all royalties and monies generated under the terms of the oil and gas lease between the Glenn L. Martz Trust and Excalibur[.]" (Intervenor's Exhibit No. 1.) Francis further averred that the purchase agreement had wording regarding Unizan's "retained interest," and that, in the event Excalibur never exercised its rights under the terms of the lease and it expired, all royalty rights and title would then pass to appellant and his wife. (Intervenor's Exhibit No. 1.)
 {¶ 21} The trial court, in addressing appellant's contention that Excalibur failed to comply with the requirements of R.C. 1509.06, noted it was undisputed that the application listed Unizan, rather than appellant, as the owner of royalty interests, and that appellant had purchased the property from the Martz trust with the conveyance subject to the oil and gas lease from the Martz trust to Excalibur. In construing the relevant *Page 9 
requirements of R.C. 1509.27 and 1509.06, including the provision that a permit application shall contain the names and addresses of all persons holding a royalty interest, the court held that "the purpose of such provisions is to provide all interested parties notice and an opportunity to have any concerns and objections heard." The trial court further held that, because appellant was present with counsel at all times during the pertinent hearings on the application, the notice provisions regarding the listing of names of royalty owners on the application became "little more than a formality which was not an issue at the hearing," resulting in no prejudice to appellant. Upon review, we agree.
 {¶ 22} As noted by the division, R.C. Chapter 1509 provides specific grounds for the division chief to deny a permit, including denial if the chief determines there is a "substantial risk that the operation will result in violations of this chapter or rules adopted under it that will present an imminent danger to public health or safety or damage to the environment" (R.C. 1509.06[F]), or if an applicant "is in material or substantial violation of this chapter or rules adopted or orders issued under it" (R.C. 1509.08). However, as further noted by the division, there is no statutory requirement that the chief deny a permit solely because an application contains incorrect information.
 {¶ 23} In Barclay Petroleum, supra, this court reversed a judgment in which the trial court had found that the division's processing of an incomplete and improperly submitted form for the transfer of an oil lease, pursuant to R.C. 1509.31, failed to effectuate the transfer of an oil well. In addressing a related due process argument, this court had occasion to construe the language of R.C. 1509.06 setting forth the procedures to be followed in an application for an oil and gas permit. This court observed that "[t]he legislature clearly contemplated thatissuance of a permit would be a relatively *Page 10 
straightforward ministerial act[.]" (Emphasis sic.) Id. Further, under the facts of that case, this court held that, even if an order transferring a permit constituted an adjudicatory act, no due process violation had been shown.
 {¶ 24} The record in the instant case shows no prejudice to appellant from the failure of Excalibur to list his name as the holder of a royalty interest. As observed by the trial court, appellant and his counsel were present at the May 2006 hearing before the TAC, as well as the November 2006 hearing before the commission. While appellant's counsel raised the issue of royalty and mineral ownership at the TAC hearing, counsel's primary contention was that there was no need for mandatory pooling; specifically, that there were alternative sites such that a well could be located on the property without mandatory pooling.
 {¶ 25} At the subsequent hearing before the commission, the focus again was on the location of the proposed well. Counsel for appellant noted at that hearing that he had appeared before the TAC on behalf of appellant and "represented to the TAC * * * that if the well could be located in the northeast quadrant of that 39-acre parcel, that there would be a location which would be legal, and Mr. Martz would lease so much of his 2.02-acre parcel, as was necessary[.]" (Commission Hearing, Dec. 11, 2006.) Counsel further stated at the commission hearing that "Mr. Martz represented to the TAC, and we're here again to do the same to you, that he will lease so much of that 2.02 acres as is necessary to meet the spacing requirements." (Commission Hearing, Dec. 11, 2006.) Counsel represented that, while appellant was willing to have a well drilled "at the location we have indicated," he was "unwilling to have a well drilled at the place where the plat shows, or to *Page 11 
the south of that. That's really the issue we have here." (Commission Hearing, Dec. 11, 2006.)
 {¶ 26} Counsel for appellant summarized his argument as follows:
 * * * [W]hile Mr. Martz would prefer that there be no well drilled on his property, if the location is moved to the northeast — northwest part of his property, essentially 500 feet down from the north and 500 feet in from the west line of his property, he will not oppose a permit to drill a well at that location. And if the State requires additional spacing from his 2-acre parcel, he has previously, and will again, represent that he will lease so much of that 2-acre parcel as is needed to get a legal location.
 With that, we believe that the statute does not allow a mandatory pooling, and by doing that, it eliminates the dispute with the Village of Hartville and the questions raised by these additional items.
(Commission Hearing, Dec. 11, 2006.)
 {¶ 27} In general, "[d]ue process requires, at a minimum, notice of the administrative action to be taken and a meaningful opportunity to be heard in connection therewith under the Fourteenth Amendment to the United States Constitution and Section 15, Article I, Ohio Constitution." Barclay Petroleum, supra.
 {¶ 28} We note that the division maintains notice to a landowner having a royalty interest is not statutorily required.[1] However, assuming, without deciding, that a holder of a royalty interest is a necessary party entitled to notice of agency proceedings/hearings concerning a petition for mandatory pooling, the record in the instant case shows that *Page 12 
appellant and his counsel fully participated at every stage of the administrative proceedings. Appellant's contention that he was treated as a "non-party" is belied by the record of administrative proceedings. As reflected above, appellant and his counsel appeared at the hearings before the TAC and the commission, and were afforded a full opportunity to challenge the application for mandatory pooling. The TAC, in fact, recommended denial of Excalibur's request for a permit in order to allow the parties to explore alternative sites, as advocated by appellant's counsel.
 {¶ 29} Because the failure to list appellant as the holder of a royalty interest had no bearing on appellant's ability to participate in the proceedings, we conclude that a remand of this matter to allow his name to be listed as the owner of royalty rights would not change the division's grant of the mandatory pooling order, nor would it change the commission's decision to affirm that determination. As appellant suffered no deprivation of due process or prejudice as a result of a purported irregularity in the permit application, the trial court did not abuse its discretion or otherwise err in affirming the order of the commission.
 {¶ 30} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
McGRATH, P.J., and BRYANT, J., concur.
[1] The division further notes that, pursuant to R.C. 1509.27, it sent notice to the Village and Excalibur. *Page 1