[Cite as *K & D Farms, Ltd v. Enervest Operating, L.L.C.*, 2015-Ohio-4475.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| K AND D FARMS, LTD, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiffs-Appellants | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00038 |
| ENERVEST OPERATING, LLC, ET AL | : |  |
|  | : |  |
|  | : | O P I N I O N |
| Defendants-Appellees |  |  |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, Case No.2013CV01867

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      October 26, 2015

APPEARANCES:

For Plaintiffs-Appellants

ERIC JOHNSON
12 W. Main Street
Canton, OH 44406

For Appellee Enervest Operating LLC
JOHN K. KELLER
THOMAS H. FUSONIE
STEVEN A. CHANG
52 E. Gay Street
Columbus, OH 43216

For Defendants-Appellees

LEONIDAS PLAKAS
COLLIN S. WISE
BRANDON S. TRENT
220 Market Avenue South
Canton, OH 44702

For Appellees Stephen & Debra Vaughan
DAVID LUNDGREN
526 East Main St.
Alliance, OH

*Gwin, P.J.*

{¶1} Appellant appeals the February 27, 2015 judgment entry of the Stark County Common Pleas Court granting appellees' motions for judgment on the pleadings.

*Facts & Procedural History*

{¶2} On March 6, 1954, appellants' predecessors-in-interest executed an oil and gas lease in favor of appellee Enervest's predecessor-in-interest, leasing approximately one hundred and seventeen (117) acres of land located in Marlboro Township in Stark County, Ohio ("Vaughan lease"). Adjoining the property under the Vaughan lease are lands owned by the Rohrers. The Rohrers entered into a similar oil and gas lease with Enervest's predecessor-in-interest on February 1, 1954, leasing approximately one hundred and eleven acres (111) of land, also located in Marlboro Township ("Rohrer lease"). Appellees Sable Creek Enterprises, LLC, ("Sable Creek") and Robert, Mary, David, and Gretchen Frase are the successors-in-interest to the Rohrer lease.

{¶3} The identical granting clauses of both the Vaughan and Rohrer leases provide that the leases were executed for, "exploring, drilling and operating for oil and gas, and all constituents thereof, and all rights necessary, convenient and incident thereto * * *." Each lease has the following clause with regards to consolidation in paragraph 7:

It is hereby agreed that the lands herein leased are to be consolidated

with other lands in Marlboro Twp., Stark [County, State] of Ohio, which are

or hereafter leased to the Lessee for oil and gas or their constituents and

the said Lessee is hereby appointed Agent of the Lessor to consolidate said lands provided that such consolidation shall not exceed 231 acres * * * I and/or we, said Lessor or Lessors do ratify and confirm the acts of the said Lessee as such agent in preparing and filing such declaration of consolidation as herein provided and the said declaration of consolidation shall have the same force and effect and bind the premises herein leases as though I and/or we had signed the acknowledgment of the same.

{¶4} The leases both additionally provide that, upon consolidation, all royalties in the oil and/or gas produced from any well that is drilled in the consolidated unit must be divided amongst the lessors in the respective proportion of the acreage/interest they own in the consolidated area ("Upon said consolidation the royalty in the oil and/or gas produced from the consolidated area shall be payable to the Lessor on the basis of the rate in this lease specified, but only in such proportion as the interest or acreage in the whole of the consolidated area * * *"). Further, both leases state that, "[a]ll covenants and conditions between the parties hereto shall extend to their heirs, executors, successors and assigns * * *." The Vaughan lease provides that, "any consolidation as mentioned in paragraph 7 shall be with the lands of E. Rohrer." The Rohrer lease contains no such restriction.

{¶5} On April 6, 1954, the Vaughan lease and Rohrer lease were consolidated into a single unit pursuant to a Declaration of Consolidation that was recorded on April 8, 1954. The Consolidation repeated the lessee's obligation to distribute any royalties from the wells drilled in the 228-acre unit to each lessor in proportion to their interest/acreage in the entire unit and stated as follows:

It is further declared that all of the acreage covered by said leases shall be considered as an entity as though covered by a single lease and the commencement of a well upon any of the acreage covered by any such lease shall be deemed a well commenced upon each of the leases hereinabove set forth. That the royalty provided to be paid in each of said leases from each such well shall be owned by and distributed to the Lessor in each of said leases in the proportion that the acreage owned by said Lessor as set forth in each lease bears to the acreage covered by all of such leases.

{¶6} From 1954 to 1980, five (5) Clinton sandstone wells were drilled in the consolidated unit. Two of the wells were drilled on the acreage subject to the Rohrer lease and three on the acreage subject to the Vaughan lease. Royalties from these wells were paid to all lessors, including appellants and their predecessors-in-interest, in the proportion of ownership of acreage in the consolidated unit.

{¶7} In 1984, the Vaughan No. 3 well was drilled. In 2011, the Hall No. 3 well was drilled. It is undisputed that both of these wells were drilled outside the 228-acre consolidated unit; however, both included acreage within the consolidated unit. For the Vaughan No. 3 well, acreage was utilized from the northwest corner of the Rohrer lease. For the Hall No. 3 well, acreage was utilized from the Rohrer lease. Appellants did not object to these wells and have received their proportional share of royalties from them.

{¶8} In October of 2006, Enervest filed an application with the Ohio Department of Natural Resources ("ODNR") for a permit to drill a well in the Rose Run formation.

Enervest listed the successors-in-interest under the Vaughan lease on the application as prospective royalty owners. However, it did not list the successors-in-interest under the Rohrer lease as royalty owners. In 2011, Enervest applied for and received a second well permit to drill another well in the Rose Run formation which listed all the members of the unit as royalty owners. Enervest drilled two separate Rose Run wells in 2007 and 2012 (Vaughan 1A and 2K wells), both located on the Vaughan lease land. From 2007 to 2011, royalties for the first well were paid exclusively to appellants, proportionally to their acreage contributions, instead of to all lessors. In 2012, Enervest informed appellants of the error and informed appellants the royalties would be distributed pursuant to the terms of the leases and the consolidation to all lessors, including appellees, in the consolidated unit. Further, that the royalty overpayment from the previous years would be "recaptured" out of future royalty payments from both Rose Run wells.

{¶9} On July 16, 2013, appellants filed a complaint against appellees for: breach of contract, breach of fiduciary duty/wrongful unitization, conversion of hydrocarbons, quiet title, and declaratory judgment under R.C. 2721 to obtain a judicial determination of the construction/validity of the Vaughan lease and determination whether Enervest is in compliance with state statutory, regulatory, and public policy requirements. After appellees filed answers to the complaint, Enervest filed a motion for judgment on the pleadings on all of appellants' claims. Sable Creek and the Frases' filed a response in support and motion to join Enervest's motion. Appellants filed a response to the motion. In their response, appellants conceded that the arguments of Enervest regarding claims for conversion and quiet title were "well taken and

[appellants'] do not object to the dismissal of such claims. Accordingly, the trial court dismissed, with prejudice, the claims for conversion and quiet title.

{¶10} The trial court issued a judgment entry on the motion for judgment on the pleadings on February 27, 2015. The trial court found as follows: appellants' claims for declaratory relief and breach of contract fail as a matter of law because the leases unambiguously require that royalties be distributed to all lessors who have an interest in the consolidation; that a well permit application submitted to ODNR that fails to list a party with contractual right to receive royalties does not abrogate and modify the contractual relationship of the parties; appellants' claim that their lease and consolidation were limited to the Clinton-Sandstone Formation is contrary to the language of the instruments; appellants' breach of fiduciary claim fails as a matter of law because any duties owed to appellants were solely contractual in nature; and appellants' fiduciary duty claim also fails because the economic loss rule bars it. Accordingly, the trial court granted appellees' motion for judgment on the pleadings and dismissed appellants' claims for declaratory judgment, breach of contract, and breach of fiduciary duty.

{¶11} Appellants appeal the February 27, 2015 judgment entry of the Stark County Common Pleas Court and assign the following as error:

{¶12} "I. THE TRIAL COURT ERRED BY DISMISSING PLAINTIFFS' COMPLAINT ON THE PLEADINGS."

I.

*Motion for Judgment on the Pleadings*

{¶13} Motions for judgment on the pleadings are governed by Civil Rule 12(C), which states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Pursuant to Civil Rule 12(C), "dismissal is [only] appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 664 N.E.2d 931 (1996). The very nature of a Civil Rule 12(C) motion is specifically designed for resolving solely questions of law. See *Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973). Reviewing courts will reverse a judgment on the pleadings if the plaintiffs can prove any set of facts that would entitle them to relief. *Flanagan v. Williams*, 87 Ohio App.3d 768, 623 N.E.2d 185 (4th Dist. Washington 1993), abrogated on other grounds by *Simmerer v. Dabbas*, 89 Ohio St.3d 856, 2000-Ohio-232, 733 N.E.2d 1169. The review will be done independent of the trial court's analysis to determine whether the moving party was entitled to judgment as a matter of law. *Id.*

{¶14} Further, while the abuse of discretion standard applies to dismissals of declaratory judgment action as not justifiable, once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed de novo. *Orwell Natural Gas Co., Inc. v. Fredon Corp*, 11th Dist. Lake No. 2014-L-026, 2015-Ohio-1212.

*Interpreting Oil and Gas Leases*

{¶15} With respect to oil and gas leases, the Ohio Supreme Court stated in *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 48 N.E.2d 502 (1987):

> [T] he rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.

{¶16} A contract is to be interpreted to give effect to the intention of the parties. *Morrison v. Petro Evaluation Serv., Inc.*, 5th Dist. Morrow No. 2004 CA 0004, 2005-Ohio-5640, citing *Employer's Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223 (1919). It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Id.*, quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.*, quoting *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St.3d 353, 1997-Ohio-202, 678 N.E.2d 519.

{¶17} Appellants admit that they received the benefit of royalty payments for at least two wells drilled in the consolidation unit located exclusively on the Rohrer lease acreage. However, appellants now seek to retain all the royalties for the wells drilled exclusively on the Vaughan acreage.

*Breach of Contract Claim*

{¶18} Appellants first argue that the trial court erred in dismissing their breach of contract claim because Enervest breached the contract by failing to timely pay them royalties for the Vaughan 1A and 2K wells.  In order to demonstrate a breach of contract, the plaintiff must demonstrate by a preponderance of the evidence: (1) that a contract existed; (2) that the plaintiff fulfilled its obligations; (3) that the defendants failed to fulfill their obligations; and (4) that damages resulted from this failure.  *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953.

{¶19} The leases at issue are binding on the parties, as they were entered into by their predecessors-in-interest and the leases state that the covenants and conditions shall "extend to their heirs, executors, successors and assigns * * *."  Because the leases are contracts, we look to the contractual language to determine the intent of the parties.  The leases provides that, upon consolidation, the royalties shall be payable, "on the basis of the rate in this lease specified, but only in such proportion as the interest or acreage in the whole of the consolidated area * * *."  Further, the Declaration of Consolidation provides that the royalties are to be paid, "in the proportion that the acreage owned by said Lessor as set forth in each lease bears to the acreage covered by all of such leases."

{¶20} Looking at the leases and Declaration of Consolidation, the unambiguous language expressly sets forth that all royalties from wells drilled on the acreage of the consolidation must be split proportionally amongst all owners in the consolidation. Because the terms of the lease agreement and Declaration of Consolidation are clear and unambiguous, there is no need to resort to parole evidence to glean the intent of

the parties. Accordingly, we find the trial court did not err in granting judgment on the pleadings as Enervest did not breach the lease by failing to timely pay royalties for the Vaughan 1A and 2K wells.

{¶21} Appellants further contend that the trial court erred in dismissing their breach of contract claim because Enervest breached the Vaughan lease by drilling the Vaughan No. 3 and Hall No. 3 wells. Appellants argue that a well drilled outside the consolidated area that utilizes land within the consolidated area violates the plain language of the Vaughan lease because it states that, "any consolidation as mentioned in paragraph 7 shall be with the lands of E. Rohrer." We disagree.

{¶22} First, the clause relied on by appellants merely provides that "any consolidation **as mentioned in paragraph 7** shall be with the lands of E. Rohrer." This plain language does not broadly prohibit the usage of any lands in the consolidation from being pooled with other lands for the purposes of drilling after the consolidated unit was created. Paragraph 7 of the Vaughan lease merely provides that the 1954 consolidation must be only with Rohrer lands, which it was. The plain language of the lease also anticipates that acreage in the consolidated unit may be used for wells not physically inside the consolidation area as it specifically provides that, "* * * the commencement of any well and/or production of oil or gas on any part of the consolidated area shall have the same effect in keeping this lease in force as though such wells are commenced and/or production had on the premises leased therein." The phrase "or production" would be meaningless if the consolidated unit was restricted to wells drilled inside the consolidated area.

{¶23} Next, the clause cited by appellants is contained only in the Vaughan lease, not in the Rohrer lease. There is no dispute that both of the No. 3 wells included only Rohrer acreage and not Vaughan acreage. Since the Rohrer acreage was not subject to the alleged prohibition contained in the Vaughan lease, the drilling of the No. 3 wells is not a breach of the Vaughan lease because the No. 3 wells did not include any acreage subject to the Vaughan lease.

{¶24} Finally, the fact that the No. 3 wells were drilled outside the consolidated area but utilize land within the consolidated area has no bearing on the re-allocation of royalties of the Vaughan 1A and 2K wells, the damages which appellants claim under their breach of contract action. Even if the Vaughan lease prohibited Enervest's actions, appellants do not identify any damages relating to the alleged breach of the lease from the No. 3 wells. The complaint contains no allegations that appellants were damaged by the drilling, operation of, or payment of royalties from the No. 3 wells. Rather, appellants admit that they "did not object to the variance from the rule and have received their proportionate share of royalties from the subject wells." Appellants thus have set forth no allegations that "damages resulted from" Enervest's "failure to fulfill their obligations" with regards to the No. 3 wells.

{¶25} The Vaughan 1A and 2K wells were both drilled on the Vaughan property and, as noted above, based upon the plain language of the leases and consolidation, the royalties from these wells were to be allocated in proportion to the ownership interest in the consolidated unit.

{¶26} Based on the foregoing, we find the trial court did not err in dismissing appellants' breach of contract claim.

*Declaratory Judgment Claim*

{¶27} As stated by appellants in their brief, their complaint asked the trial court to determine: (1) an interpretation of the relevant language from the Vaughan lease and (2) whether Enervest's payments of royalties complied with R.C. 1509.06, which requires operating oil and gas wells in compliance with assertions made in a lessee's drilling application.

{¶28} Appellants first argue that the trial court erred in dismissing their claim for declaratory relief because the Vaughan lease was executed in contemplation of drilling Clinton wells and the lease did not contemplate deeper formations to find isolated pools of oil. We disagree.

{¶29} There is no language contained in the leases or the consolidation that limits the formations from which oil and gas can be extracted. Paragraph 7 of each of the leases provides that "the lands herein leased" are to be consolidated. There is no limitation or reference to any specific geological formation. The granting clause of each lease states that the lease is for the "sole and only purpose of exploring, drilling, and operating for oil and gas * * * all that certain tract of land * * *." If a granting clause does not contain terms limiting the depth or formation, the rights are granted to all depths. *Marshall v. Beekay Co.*, 4th Dist. Washington No. 14CA16, 2015-Ohio-238. Further, the consolidation states that it applies to "any of the acreage covered by any such lease." The language is not ambiguous and expressly conveys to Enervest the right to explore, drill, and commence operations for extracting oil and gas on the entire acreage, without limitation.

{¶30} Appellants further argue that the trial court erred in dismissing their declaratory judgment claim due to the fact that the No. 3 wells were drilled outside the consolidated area, but utilized land within the consolidated area. Based upon our discussion as detailed above, we find appellants' argument to be not well-taken.

{¶31} Appellants contend that R.C. 1509.06 requires Enervest to issue royalties to only those landowners included in its permit application and that, by filing an application for a drilling permit with ODNR that omitted the names and addresses of the Rohrer lease royalty owners, Enervest modified the terms of the parties' contract and thus appellants are entitled to keep the overpayments.

{¶32} R.C. 1509.07 provides, in part, that an application for a mandatory pooling order "shall be accompanied by an application for permit," and further provides that an application "shall be filed with the chief of the division of mineral resources management" and shall contain "the names and addresses of all persons holding the royalty interest in the tract upon which the well is located or is to be drilled or within a proposed drilling unit." R.C. 1509.27. In construing the requirements of R.C. 1509.27 and R.C. 1509.06, including the requirement that an application contain the names and addresses of all persons holding a royalty interest, an Ohio court has stated that, "the purpose of such provisions is to provide all interested parties notice and an opportunity to have any concerns and objections heard." *Martz v. Chief, Div. of Mineral Resource Mgmt.*, 10th Dist. Franklin No. 08AP-12, 2008-Ohio-4003. Further, that this requirement is "little more than a formality" and there is no statutory requirement that the chief deny a permit solely because the application contains incorrect information. *Id.*

{¶33} Another court stated that in following the procedure for an application for an oil and gas permit, " * * * the legislature clearly contemplated that issuance of a permit would be a relatively straightforward and ministerial act * * *" and not a declaration of the parties' rights. *Barclay Petroleum, Inc. v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No. 00AP-592, 2001 WL 242567 (March 13, 2001). There is no provision in R.C. 1509.06 that provides any authority for a court to alter the terms of a lease.  The cases cited by appellants involve orders for compulsory pooling that upheld the state's authority to order a compulsory unit.  In this case, ODNR has not ordered a compulsory pooling unit or conservation order.  The well permits attached to the complaint are not mandatory pooling orders that could potentially supersede an existing unit.  The omission of certain royalty owners on a single well permit application does not alter the provisions of the parties' lease or consolidation agreement.

{¶34} Based on the foregoing, we find the trial court did not err in granting judgment on the pleadings on appellants' declaratory judgment action.

*Breach of Fiduciary Duty*

{¶35} Appellants argue that it was improper for the trial court to dismiss their breach of fiduciary claim because Enervest violated the fiduciary duty of good faith when it redistributed royalties from the Vaughan 1A and 2K Rose Run wells to other landowners within the 1954 unit who did not own that discrete pool of oil.

{¶36} The elements for a breach of fiduciary duty claim are: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.  *Grossniklaus v. Waltman*, 5th Dist. Holmes No. 09 CA 15, 2010-Ohio-2937.  "A claim of breach of fiduciary duty is basically a claim for

negligence that involves a higher standard of care." *Id.* A "fiduciary relationship" is one which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence acquired by virtue of this special trust. *In re: Termination of Employment*, 40 Ohio St.2d 107, 321 N.E.2d 603 (1974). The burden of proving the existence of a fiduciary relationship is on the party asserting it. *Craggett v. Andell Ins. Agency*, 92 Ohio App.3d 443, 635 N.E.2d 1326 (8th Dist. Cuyahoga).

{¶37} Appellants argue that since the word "agent" is utilized in the lease, a fiduciary duty is created between appellants and Enervest. Without additional allegations that would establish a fiduciary relationship, solely using the word "agent" does not establish a fiduciary duty between the lessor and the lessee in a lease. Rather, the relationship is governed by the principles of contract. See *Shaver v. Standard Oil*, 135 Ohio App.3d 242, 733 N.E.2d 645 (6th Dist. Huron 1999); *Amoco Production Co. v. Heimann*, 904 F.2d 1405 (10th Cir. 1990).

{¶38} Further, even if we were to find that the word "agent" created a fiduciary relationship between the parties, it is clear from the plain language of the lease that such duty was limited to the creation and filing of the consolidation unit in 1954. Paragraph 7 of the Vaughan lease specifically provides that Enervest's predeccessor-in-interest is "hereby appointed Agent of the Lessor to consolidate said lands provide that such consolidation shall not exceed 231 acres * * * I and/or we, said Lessor or Lessors do ratify and confirm the acts of the said Lessee as such agent in preparing and filing such declaration of consolidation * * *." Appellants allege no damages with regard to the creation of the consolidated unit in 1954 and concede that Enervest satisfied these

duties when it created the unit. Accordingly, there is no "injury resulting proximately therefrom."

{¶39} Even assuming the existence of a fiduciary agreement, any obligations Enervest has are derived solely from the lease agreement. "A tort claim based upon the same actions as those upon which a claim of contract breach will exist independently of the contract action only if the breaching party also breached a duty owed separately from that created by contract * * *." *Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio Ap.3d 137, 684 N.E.2d 1261 (9th Dist. 1996). A breach of contract alone will not give rise to an action in tort and Ohio courts have "repeatedly have stated that it is no tort to breach a contract, regardless of the motive." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983); *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353.

{¶40} In this case, appellants' breach of fiduciary duty claim is based on alleged breaches of contract promises purportedly in the Vaughan lease and the obligations owed by Enervest grew out of the contract/lease. The breach of contract claim and breach of fiduciary duty claim seek the same damages: payment of royalties from the Vaughan 1A and 2K wells. Accordingly, because the claim is based upon an existing alleged contractual duty, it fails as a matter of law as a separate tort claim.

{¶41} We further find that appellants' breach of fiduciary duty claim is barred by the economic loss doctrine. The Ohio Supreme Court has held that the economic-loss rule generally prevents recovery in tort damages of purely economic loss as, "the well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or

compensable." *Chemtrol Adhesives, Inc. v. American Manufacturers Mut. Ins. Co.*, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989); *Corporex Dev. & Contr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701.  The rule stems from the recognition of a balance between tort law and contract law.  *Id.*  "Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement."  *Floor Craft Floor Covering, Inc. v. Parma Community General Hospital Assn.*, 54 Ohio St.3d 1, 560 N.E.2d 206 (1990); *Potts v. Safeco Ins. Co.*, 5th Dist. Richland No. 2009CA0083, 2010-Ohio-2042.

{¶42} In this case, appellants fail to claim a breach of any duty imposed that would justify recovery of purely economic damages in tort.  Instead, appellants merely allege a breach of contractually created duties.  See *Corporex Dev. & Contr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701.  Appellants expressly allege economic loss in their complaint because they seek, as damages for the breach of fiduciary duty, "damages in that the royalties rightly due to them have been given to others."  These damages arising from the calculation and distribution of royalties are purely economic losses and thus the breach of fiduciary duty action is barred by the doctrine of economic loss.

{¶43} Appellants argue that since Enervest was within its rights under the Vaughan and Rohrer leases to take portions of the Rohrer-Vaughan unit and include it within other units, it could also create other, smaller units only using Rohrer-Vaughan lands.  Further, since Enervest had this right, Enervest had a fiduciary duty to create these smaller units and issue royalties only to the owners whose land contains the deeper formations with isolated pools of oil.  We disagree with appellants' assertion that

Enervest has a "duty" to create smaller units to appellants' economic advantage and in contravention of the Rohrer and Vaughan leases' plain language simply because Enervest created smaller units with wells that were not drilled on Rohrer or Vaughan leases. As noted above, any "duty" created by the lease applies only to the 1954 consolidation and not to any other smaller units. Any re-consolidation would have to be completed via a recorded consolidation agreement rather than a drilling permit to ODNR. Further, the smaller units utilizing the Rohrer land are dissimilar to the smaller units that appellants want Enervest to create, as the wells in the smaller units were not drilled on any Rohrer or Vaughan land. The smaller units appellants seek have wells drilled on the Rohrer or Vaughan land that are subject to the Rohrer and Vaughan leases. Finally, appellants allege no damages as a result of this alleged breach of fiduciary duty, as they are receiving royalties from the No. 3 wells and are receiving royalties from the 1A and 2K wells in proportionate share, as required by the plain language of the leases.

{¶44} Based on the forgoing, we find the trial court did not err in finding appellants' breach of fiduciary duty claim fails as a matter of law.

*Wrongful Unitization*

{¶45} Appellants contend the trial court erred in dismissing their wrongful unitization claim. Further, that their declaratory judgment and breach of fiduciary claims required the trial court to determine whether the unitization was wrongful.

{¶46} With regards to appellants' argument as to a "claim for wrongful unitization," appellants failed to plead a separate claim in their complaint. Rather, the term "wrongful unitization" appears only in their claims for declaratory judgment and

breach of fiduciary duty. Accordingly, any claim for wrongful unitization as a separate cause of action was not raised in the trial court. The failure to raise such issue in the trial court results in a waiver of their right to raise such issue on appeal. *Potts v. Safeco Ins. Co.*, 5th Dist. Richland No. 2009CA0083, 2010-Ohio-2042.

{¶47} We further find appellants' argument that the trial court had to determine whether the unitization was wrongful to review their breach of fiduciary claim and/or declaratory judgment claim to be not well-taken based upon the legal standards for these claims as discussed above. As detailed above, Enervest did not alter the lease by omitting royalty owners in an ODNR application; thus, Enervest did not "wrongfully unitize" appellants' acreage by changing the royalty owners in the drilling applications. Also as discussed above, appellants seek only damages arising from the calculation and distribution of royalties from the 1A and 2K wells, pure economic loss, which relies on the same course of conduct as the breach of contract claim. Thus, any wrongful unitization as part of a breach of fiduciary duty claim fails. Further, the complaint lacks facts or allegations as to wrongful unitization, as the facts pled in the complaint indicate that both the Vaughan and the Rohrer leases are currently and have been held by production. Finally, the plain language of both the Vaughan and Rohrer leases authorized the unitization in question and required Enervest to distribute royalties in proportion with each lessor's interest in the entire acreage of the consolidation.

{¶48} Based upon the foregoing, we find the trial court did not err in dismissing appellants' complaint. Appellants' assignment of error is overruled and the February 27, 2015 judgment entry of the Stark County Common Pleas Court is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur