[Cite as *Am. Energy-Utica, L.L.C., v. Fuller*, 2018-Ohio-3250.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| AMERICAN ENERGY - UTICA, LLC, et al. | JUDGES:<br>Hon. John W. Wise, P. J.<br>Hon. Patricia A. Delaney, J. |
| Plaintiffs-Appellees | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 17 CA 000028 |
| RONALD L. FULLER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No.  15OG190


JUDGMENT:     Affirmed in Part; Reversed in Part and Remanded


DATE OF JUDGMENT ENTRY:     August 13, 2018


APPEARANCES:

For Plaintiff-Appellees

CLAY K. KELLER
ANDREW N. SCHOCK
JACKSON KELLY PLLC
50 South Main Street
Suite 201
Akron, Ohio  44308

For Defendant-Appellant

MICHAEL J. MATASICH
1375 E. 9th Street, Suite 1700
Cleveland, Ohio  44114

MATTHEW R. DUNCAN
3800 Embassy Parkway, Suite 300
Akron, Ohio  44333-8332

*Wise, John, P. J.*

{¶1}   Defendant-Appellant Ronald Fuller appeals the decision of the Guernsey County Court of Common Pleas granting summary judgment in favor of Plaintiff-Appellees American Energy - Utica, LLC, et al.

## STATEMENT OF THE FACTS AND CASE

{¶2}   This matter involves the construction of an oil and gas lease on property located in Londonderry Township in Guernsey County, Ohio.

{¶3}   The relevant facts and procedural history are as follows:

{¶4}   Ronald Fuller is the owner of a tract of real property in Londonderry Township, Guernsey County, containing 94.5 acres.  On or about June 3, 1981, Ronald Fuller and his wife Shirley Ann, now deceased, executed a three-year oil and gas lease with D.B. Shaffer & Associates, Inc.

{¶5}   Pursuant to the terms of the Lease, the Fullers:

grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying of pipe lines, and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land ....

{¶6}   The term of the lease is set forth as follows:

this lease shall remain in force for a primary term of three years from this date and if lessee shall commence to drill within said primary term or any extension thereof, the said lessee shall have the right to continue drilling to completion with reasonable diligence and said term shall extend long

thereafter as oil and gas, or either of them, is produced by lessee from said land or from a communitized unit as hereinafter provided.

**{¶7}** The landman for D.B. Shaffer, John Robinson, made hand-written changes to the standard lease form to reflect the intent of the parties and to embody the terms to which the Fullers and D.B. Shaffer agreed. (Fuller Depo. at 30-31, 71). Specifically, Mr. Robinson hand-wrote the following provisions into the Fuller Lease:

Mr. Robinson crossed out the standard lease provision that allowed unitization and in its place wrote, "UNITIZATION BY WRITTEN AGREEMENT ONLY!" (emphasis by Mr. Robinson); Lease, p. 1.

Each well will hold only 40 acres after the primary term of this lease expires.

**{¶8}** Lease, p. 2.

**{¶9}** Pursuant to the Lease, the "Fuller No. 1" Well (API #34059232750000) was drilled and completed in 1981. It is undisputed that since 1981, the Fuller Well has remained active and is producing oil and gas sufficient to continue the D.B. Shaffer Lease as to the forty acre unit established for this well. There is no dispute as to the remaining 54.5 acres, which are no longer encumbered by the D.B. Shaffer Lease. The parties agree that the terms of the D.B. Shaffer Lease are clear and unambiguous. (*See* the parties respective Trial Briefs, filed August 12, 2016).

**{¶10}** In 2009, pursuant to various recorded assignments of interest, EnerVest Energy Institutional Fund XI-A, L.P., EnerVest Energy Institutional Fund XI-WI, L.P., and CGAS Properties, L.P. (the "EV Entities") became the lessees of the DB Shaffer Lease and EnerVest Operating, L.L.C. ("EV Operating") became the operator of the Fuller Well.

The EV Entities subsequently assigned the Utica, Point Pleasant, and Trenton formations (the "Deep Rights") of several leases, including the D.B. Shaffer Lease to American Energy-Utica, LLC nka Ascent Resources in 2013.

{¶11} After the Enervest-AEU Transaction closed, AEU requested that Mr. Fuller execute an amendment to the Fuller Lease to allow AEU to unitize the Fuller Parcel into a large drilling unit with other tracts of land for purposes of deep horizontal drilling into the Utica shale formation. (*See* Fuller Depo., pp. 119-123). The parties were unable to reach an agreement, and AEU was unable to obtain Mr. Fuller's consent. *Id.*

{¶12} On May 7, 2015, Plaintiff-Appellee, American Energy-Utica, LLC nka Ascent Resources-Utica, LLC ("AEU"), and its vendor, TGS-NOPEC Geophysical Co. ("TGS"), filed a Complaint against Defendant-Appellant Ronald Fuller seeking an injunction to gain access to Mr. Fuller's property in Londonderry Township, Guernsey County, to conduct seismic testing in anticipation of Utica shale operations. AEU and TGS claimed a right to enter Mr. Fuller's property and conduct testing as the assignee of the "deep rights" under a 1981 oil and gas lease between Mr. Fuller, his now-deceased wife, Shirley, and a leasing company called D.B. Shaffer & Associates, Inc. ("D.B. Shaffer").

{¶13} On May 28, 2015, Mr. Fuller filed an Answer and Counterclaim against AEU seeking, in pertinent part, a declaratory judgment that the 1981 oil and gas lease does not include the right to drill the Utica shale or to extract natural resources other than oil and gas, such as natural gas liquids ("NGLs") (Count II), slander of title (Count V), and quiet title (Count VI). Mr. Fuller also named various "Enervest" entities as counterclaim-defendants. Enervest purported to sell the "deep rights" to AEU and retained an interest in the 1981 oil and gas lease.

**{¶14}** AEU and TGS's claim for an injunction against Mr. Fuller was settled and the Complaint was dismissed by the trial court on June 30, 2015, leaving only Mr. Fuller's Counterclaim.

**{¶15}** In July, 2015, Mr. Fuller was served with notice from the Ohio Division of Oil and Gas that AEU filed an application pursuant to R.C. §1509.28 to force a portion of Mr. Fuller's property into a 462 acre Utica shale drilling unit known as the "Henry Unit."

**{¶16}** On August 13, 2015, Mr. Fuller filed a Motion for Leave to File Amended Counterclaim, seeking to add an allegation of breach of the oil and gas lease provision which provides, "UNITIZATION BY WRITTEN AGREEMENT ONLY!" (Count IV).

**{¶17}** On August 14, 2015, the trial court granted said motion and Mr. Fuller filed his Amended Counterclaim on August 19, 2015.

**{¶18}** On June 30, 2016, the parties filed cross-motions for summary judgment. Mr. Fuller sought summary judgment on Count II seeking a declaratory judgment that the lease does not include the right to drill the Utica shale or to extract natural resources other than oil and gas, such as NGLs. Mr. Fuller also sought partial summary judgment on Count IV, that ABU breached the lease by forcing his property into the Henry Unit without his written agreement. Mr. Fuller did not seek summary judgment on Count V alleging slander of title or on Count VI for quiet title. However those counterclaims are grounded upon Counts II and Count IV.

**{¶19}** ABU and Enervest sought summary judgment on Counts II, IV, V and VI.

**{¶20}** By Order dated December 28, 2016, the trial court denied the parties' cross-motions for summary judgment, holding that "the Court finds there are material disputed facts presented by the parties in their pleadings such as the Court is unable to determine

that either party is entitled to judgment as a matter of law based on the pleadings and affidavits in their submissions."

{¶21} On June 30, 2017, ABU and Enervest filed a Motion for Reconsideration and Revision, requesting the trial court to reconsider it December 28, 2016, Order and enter summary judgment in their favor on Mr. Fuller's Amended Counterclaim. After further briefing by the parties, the trial court denied the Motion.

{¶22} On August 8, 2017, at an oral hearing before the court, ABU and Enervest orally moved for reconsideration again, and for a third time requested the trial court to enter summary judgment in their favor on Mr. Fuller's Amended Counterclaim. This time, by Order dated August 25, 2017, the trial court agreed to reconsider its prior summary judgment rulings, and it ordered the parties to filed new summary judgment motions by September 29, 2017.

{¶23} The parties filed new summary judgment motions on September 29, 2017, as well as additional briefs and other filings October 24, 2017.

{¶24} AEU and Enervest did not make any new arguments or present any new evidence in this round of summary judgment briefings.

{¶25} By Order dated December 4, 2017, the trial court granted summary judgment to AEU and Enervest and against Mr. Fuller. The trial court entered a Final Order on December 12, 2017, dismissing Mr. Fuller's Amended Counterclaim. The Trial Court held on Count II, the oil and gas lease "covers all formations underlying the property and any oil and gas which may be extracted based on a plain reading of the lease under Ohio law." The trial court held on Count IV, "R.C. 1509.28 permits the unitization of the

lease", and the trial court dismissed Counts V and VI because it dismissed Counts II and IV.

**{¶26}** Appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶27}** "I. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT PLAINTIFF/APPELLEE DID NOT BREACH THE OIL AND GAS LEASE PROVISION PROHIBITING UNITIZATION WITHOUT DEFENDANT/APPELLANT'S WRITTEN AGREEMENT WHEN PLAINTIFF/APPELLEE UNITIZED DEFENDANT/APPELLANT'S PROPERTY WITHOUT HIS WRITTEN AGREEMENT.

**{¶28}** "II. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE OIL AND GAS LEASE COVERS ALL FORMATIONS UNDERLYING THE PROPERTY AND ANY OIL AND GAS WHICH MAY BE EXTRACTED."

### Summary Judgment Standard

**{¶29}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it

appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶30} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶31} It is based upon this standard that we review Appellant's Assignments of Error.

## I.

{¶32} In the first assignment of error, Appellant challenges the trial court judgment entry granting summary judgment in favor of Appellee on its breach of lease claim.

*Interpreting Oil and Gas Leases*

{¶33} With respect to oil and gas leases, the Ohio Supreme Court stated in *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 48 N.E.2d 502 (1987):

> [T]he rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties.

{¶34} A contract is to be interpreted to give effect to the intention of the parties. *Morrison v. Petro Evaluation Serv., Inc.,* 5th Dist. Morrow No. 2004 CA 0004, 2005–Ohio–5640, citing *Employer's Liab. Assur. Corp. v. Roehm,* 99 Ohio St. 343, 124 N.E. 223 (1919). It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Id.,* quoting *Skivolocki v. East Ohio Gas Co.,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.,* quoting *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.,* 78 Ohio St.3d 353, 1997–Ohio–202, 678 N.E.2d 519.

{¶35} The parties to the D.B. Shaffer Lease included the handwritten provision "UNITIZATION BY WRITTEN AGREEMENT ONLY!", as well as the 40-acre limit on unit sizes as set forth above.

{¶36} In its decisions, the trial court, in finding in favor of Appellees on Appellant's counterclaim, held:

> Count IV – Breach of Lease
>
> The Court finds that R.C. 1509.28 permits unitization of the lease. See this Court's decision in *American Energy-Utica, LLC, et al. v. Jon Matthew Crislip, et al.* Guernsey County Court of Common Pleas, Case No. 15-OG-189. (Entry, Dec. 4, 2017).
>
> ***
>
> 2. R.C. 1509.28 permits unitization of the lease dated June 3, 1981 and recorded in Volume 90, Page 244 of the Guernsey County Lease Records. Judgment is entered in favor of Plaintiff and Counterclaim Defendants on Count IV of Defendant's Counterclaim. (Final Order, Dec. 12, 2017).

{¶37} While we do not disagree that R.C. 1509.28 permits unitization of the lease, we do find that in this case, doing so without Fuller's written agreement was a breach of the lease agreement.

{¶38} Much legislation has been enacted in regulating the drilling of oil and gas wells. R.C. §1509.24 authorizes the Chief of the Division of Oil and Gas to establish rules and regulations with respect to the minimum acreage necessary to comprise a drilling unit. Ohio Adm.Code 1509:9–1–04(C)(4)(a) provides that wells of the depth of the subject well must be situated upon a minimum of forty acres to establish a drilling unit. R.C. §1509.26 allows for voluntary pooling agreements to form drilling units which conform to the minimum acreage and distance requirements. R.C. §1509.27 allows for mandatory

pooling orders from the Chief of the Division of Oil and Gas where an owner is unable to secure a voluntary pooling agreement. R.C. §1509.28 allows the Chief to make orders providing for unit operations when reasonably necessary to increase the recovery of oil and gas.

{¶39} In *Burtner–Morgan–Stephens Co. v. Wilson* (1992), 63 Ohio St.3d 257, 586 N.E.2d 1062, syllabus, the Ohio Supreme Court, in a unanimous decision, reviewed a case involving of application of a R.C. Chapter 1509 statute to a pre-existing oil and gas lease. In that case, the Court held that, pursuant to Section 28, Article II of the Ohio Constitution, a statute could not be retroactively applied to determine the distribution of royalties that were provided for in an agreement entered into prior to the enactment of the statute. In so holding, the Court explained:

In the cause *sub judice,* the trial court retroactively applied the above statutes, rules and regulations in order to defeat the clear and unambiguous language of the 1949 oil and gas lease with regard to the payment of royalties generated by a producing well. In our view, such retroactive application clearly violated Section 28, Article II of the Ohio Constitution by impairing an obligation of contract. *See Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 28 OBR 337, 503 N.E.2d 753.

The lease involved in this action was recorded shortly after it was entered into and, therefore, all parties to this action had at least constructive notice of how royalties were to be distributed for a producing well on the property in issue. While the state's police powers permit the General Assembly to enact legislation governing pooling arrangements, spacing,

unitization and other oil and gas drilling regulations, a provision such as that found in R.C. 1509.27(D) governing distribution of royalties cannot, under the specific facts of this case, be used to retroactively impair the obligation of the contract set forth in the 1949 lease. *See Goodale v. Fennell* (1875), 27 Ohio St. 426. To hold otherwise would emasculate both the letter and spirit of the Ohio Constitution.

Therefore, we hold that pursuant to Section 28, Article II of the Ohio Constitution, R.C. 1509.27(D) may not be retroactively applied to determine distribution of royalties that are provided for in an oil and gas lease that was entered into and recorded prior to the enactment of the statutory provision.

**{¶40}** In applying the above holding to the case before us, we find that Appellees' use of the application procedure under R.C. 1509.28, without Fuller's written agreement, was "used to retroactively impair the obligation of the contract" set forth in the Lease. We therefore find that such constituted a breach of the lease and hereby remand this matter back to the trial court to make a determination of the appropriate remedy.

**{¶41}** Based on the foregoing, this Court finds Appellant's first assignment of error well-taken and sustains same.

**II.**

**{¶42}** In his second assignment of error, Appellant argues that the trial court erred in finding that the oil and gas lease covers all formations underlying the property. We disagree.

**{¶43}** Here, the trial court found "that the DB Shaffer Lease covers all formations underlying the Property and any oil and gas which may be extracted by a plain reading of

the lease under Ohio law." In support, the trial court cited this Court's decision in *K & D Farms, Ltd. v. Enervest Operating, L.L.C.*, 5th Dist. Stark County No. 2015-CA-00038, 2015-Ohio-4475.

**{¶44}** As in this case, the Appellants in *K & D Farms* argued that the subject lease was executed in contemplation of drilling Clinton wells and did not contemplate deeper formations to find isolated pools of oil. This Court disagreed, finding:

> There is no language contained in the leases or the consolidation that limits the formations from which oil and gas can be extracted. Paragraph 7 of each of the leases provides that "the lands herein leased" are to be consolidated. There is no limitation or reference to any specific geological formation. The granting clause of each lease states that the lease is for the "sole and only purpose of exploring, drilling, and operating for oil and gas * * * all that certain tract of land * * *." If a granting clause does not contain terms limiting the depth or formation, the rights are granted to all depths. *Marshall v. Beekay Co.,* 4th Dist. Washington No. 14CA16, 2015–Ohio–238. Further, the consolidation states that it applies to "any of the acreage covered by any such lease." The language is not ambiguous and expressly conveys to Enervest the right to explore, drill, and commence operations for extracting oil and gas on the entire acreage, without limitation.

**{¶45}** The Supreme Court of Ohio has also held that the terms "oil" and "gas" included products in both the refined and natural states. *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 248, 374 N.E.2d 146, 151 (1978) (holding that gasoline, two types

of fuel oil, gas oil, propane, and butane were all within the meaning of the terms "oil" and "gas" when no restrictive language was used). The Supreme Court of Ohio further reasoned that a restriction of the terms "oil" and "gas" could have been easily accomplished through the use of limiting language, such as "crude oil" or "natural gas," and that absent qualifying language the court must "assume that they intended no restrictive meaning." *Id.*

{¶46}  In the case *sub judice*, the granting clause reads:

... grant, demise, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying of pipe lines, and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the Township of Londonderry, County of Guernsey, State of Ohio, described as follows, to wit: being all land owned by lessor in Section 13 and 18. ...

{¶47} As the granting clause does not contain terms limiting the depth or formation, the rights are granted to all depths.  Based on the foregoing, we find the trial court did not err in granting judgment in favor of Appellee on this issue.

{¶48} Appellant's second assignment of error is overruled.

{¶49}  Accordingly the judgment of the Guernsey County Court of Common Pleas is affirmed in part, reversed in part and remanded for further proceedings consistent with the law and this opinion.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.

JWW/d 0802