[Cite as *Chervenak Family Trust v. Ascent Resources - Utica, L.L.C.*, 2026-Ohio-886.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHERVENAK FAMILY TRUST, JOHN E. CHERVENAK, TRUSTEE | Case No. 25CA00033 |
| Plaintiff - Appellant | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Guernsey County Court of Common Pleas, Case No. 25-OG-000052 |
| ASCENT RESOURCES – UTICA, LLC | Judgment: Affirmed |
| Defendant - Appellee | Date of Judgment Entry: March 16, 2026 |

**BEFORE:** Andrew J. King, William B. Hoffman, David M. Gormley, Appellate Judges

**APPEARANCES:** Ethan Vessels, Fields, Dehmlow & Vessels, LLC, for Plaintiff-Appellant; Kevin L. Colosimo, Christopher W. Rogers, Frost Brown Todd LLP, for Defendant-Appellee

OPINION

*Hoffman, J.*

**{¶1}** Plaintiff-appellant Chervenak Family Trust, John E. Chervenak, Trustee, appeals the summary judgment entered by the Guernsey County Common Pleas Court dismissing its complaint against Defendant-appellee Ascent Resources – Utica, LLC, for breach of contract and declaratory judgment.

STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant is an Ohio trust which owns the fee minerals of a 115.4-acre tract of land located in Guernsey County (hereinafter the "subject property"). The subject property is encumbered by a 1972 oil and gas lease which Appellant's predecessors, Charles and Bernice Clary, entered with William Humbleton.

**{¶3}** Appellee is an oil and gas exploration and production company headquartered in Oklahoma City, Oklahoma. Appellee is the successor lessee of the lease encumbering the subject property as to deep formations, including the Utica/Point Pleasant formation.

**{¶4}** The lease includes the following provision:

The Lessor hereby grants to the Lessee the right to consolidate the leased premises with other lands to form an oil and gas development unit of not more than one hundred sixty (160) acres for the purpose of drilling a well thereon, but the Lessee shall in no event be required to drill more than one well on such unit. Any well drilled on said development unit, whether or not located on the leased premises, shall nevertheless be deemed to be

located upon the leased premises within the meaning and for the purposes of all the provisions and covenants of this lease to the same effect as if all the lands comprising said unit were described in and subject to this lease; provided, however, that only the owner of the lands on which such well is located may take gas for use in one dwelling house on such owner's lands in accordance with the provisions of this lease, and provided further that the Lessor agrees to accept, in lieu of the 1/8 oil and gas royalty hereinbefore provided, that proportion of each 1/8 royalty which the acreage herein leased bears to the total number of acres comprising said development unit. If said development unit shall thereafter be used for gas storage purposes the well rental or land rental hereinbefore provided for such use shall be payable to the owners of the parcels of land comprising said unit in the proportion that the acreage of each such parcel bears to the entire acreage of said unit.

{¶5} The lease includes no language specifically addressing statutory unitization pursuant to R.C. 1509.28.

{¶6} The lease was perpetuated beyond its primary terms and into its secondary terms by continuous production in paying quantities of two conventional, vertical wells: the Dombroski No. 1 Well and the Dombroski-Rymer No. 1 Well, both drilled in 1982.

{¶7} In July of 2024, Appellee submitted applications to the Chief of the Division of Oil and Gas Resources Management of the Ohio Department of Natural Resources (hereinafter the "Chief") pursuant to R.C. 1509.28. Appellee sought to include the subject

property in three statutory production units, each of which exceeded 160 acres in size. After holding hearings for each of the three applications and overruling Appellant's objections to the statutory unitization of the subject property, the Chief issued three orders for unit operation which designated Appellee as the unit operator. Pursuant to the orders of the Chief, Appellee proceeded with plans to drill oil and gas wells to correspond with the units, including the subject property. Appellee obtained permits in December of 2024, to drill on each of the three units.

{¶8} Appellant filed the instant action on February 5, 2025, seeking declaratory judgment and damages for breach of contract. Appellant's complaint asserts the lease prohibits the inclusion of the subject property in production units of greater than 160 acres, and Appellee's inclusion of the subject property in the units of greater than 160 acres, which it received statutory authority to drill pursuant to R.C. 1509.28, violates the terms of the lease.

{¶9} Both parties filed summary judgment motions concerning Appellant's claim for declaratory judgment. The parties stipulated to the facts. The trial court granted Appellee's motion for summary judgment and denied Appellant's motion for summary judgment, finding the portion of the lease quoted above did not prohibit statutory unitization of the property in units of greater than 160 acres, but only addressed voluntary unitization. By judgment filed September 11, 2025, the trial court granted partial summary judgment to Appellee, dismissing Appellant's claim for declaratory judgment. In a judgment filed September 17, 2025, the trial court found its September 11, 2025 judgment rendered Appellant's breach of contract claim moot, and dismissed the claim. The trial court entered judgment in favor of Appellee as to all claims of the complaint.

**{¶10}** It is from the September 11 and September 17, 2025 judgments of the trial court Appellant prosecutes its appeal, assigning as error:

I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR THE DEFENDANT.

II. THE TRIAL COURT ERRED IN FAILING TO GRANT THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

I., II.

**{¶11}** We address both assignments of error together, as both raise the legal issue of whether the lease prohibits statutory unitization of the subject property in units of more than 160 acres. The parties stipulated to the facts, and each party argued it was entitled to summary judgment.

**{¶12}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence

or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶13} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *See Vahila v. Hall*, 1997-Ohio-259, *citing Dresher v. Burt*, 1996-Ohio-107.

{¶14} Oil and gas leases are governed by Ohio contract law. "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies

of the parties." *Swallie v. Rousenberg*, 2010-Ohio-4573, ¶ 61 (7th Dist.), *quoting Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129 (1897).

**{¶15}** "Unitization" refers to the consolidation of minerals or working interest covering all or part of a common source of supply. *Paczewski v. Antero Res. Corp.*, 2019-Ohio-2641, ¶ 4 (7th Dist.). "Pooling" is the joining together of small tracts or portions of tracts for the purpose of having sufficient acreage to receive a well drilling permit under the relevant spacing laws and regulations, and for the purpose of sharing production by interest owners in the pool unit. *Id*. at ¶ 5. R.C. 1509.26 authorizes voluntary pooling agreements to form drilling units which conform to the applicable minimum acreage and distance requirements. In the event a voluntary pooling agreement cannot be obtained, R.C. 1509.27 authorizes the division of oil and gas resources management to issue a mandatory pooling order. At issue in the instant case, R.C. 1509.28 allows a person who has obtained the consent of the owners of at least 65% of the land area overlying a pool or part of a pool to submit an application to the Chief for the operation of the entire pool or part of the pool as a unit.

**{¶16}** Appellant argues the trial court erred in granting Appellee summary judgment and failing to grant Appellant summary judgment based on this Court's decision in *Am. Energy – Utica, LLC v. Fuller,* 2018-Ohio-3250 (5th Dist.). We disagree.

**{¶17}** In *Fuller,* the lease provision which allowed unitization was crossed out, and in its place, the landman representing the oil and gas company wrote, "UNITIZATION BY WRITTEN AGREEMENT ONLY!" The oil and gas company pursued statutory unitization without obtaining Fuller's written agreement. Fuller sued for breach of the lease provision. The trial court granted the oil and gas company's motion for summary judgment, finding

R.C. 1509.28 permitted unitization of the lease despite the lease provision prohibiting unitization without written agreement.

**{¶18}** On appeal, this Court reversed. We agreed with the trial court's finding R.C. 1509.28 permitted unitization of the lease despite the language of the lease. However, we found doing so without Fuller's written agreement was a breach of the lease agreement. In so holding, we cited to the Ohio Supreme Court's decision in *Burtner-Morgan-Stephens Co. v. Wilson,* 63 Ohio St. 3d 257, syllabus (1992), in which the court held pursuant to Section 28, Article I of the Ohio Constitution, R.C. 1509.27(D) regarding royalties could not be retroactively applied to a pre-existing oil and gas lease. We quoted *Burtner* as follows:

> In the cause *sub judice*, the trial court retroactively applied the above statutes, rules and regulations in order to defeat the clear and unambiguous language of the 1949 oil and gas lease with regard to the payment of royalties generated by a producing well. In our view, such retroactive application clearly violated Section 28, Article II of the Ohio Constitution by impairing an obligation of contract. See *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 28 OBR 337, 503 N.E.3d 753. The lease involved in this action was recorded shortly after it was entered into and, therefore, all parties to this action had at least constructive notice of how royalties were to be distributed for a producing well on the property in issue. While the state's police powers permit the General Assembly to enact legislation governing pooling arrangements, spacing, unitization and other oil and gas drilling

regulations, a provision such as that found in R.C. 1509.27(D) governing **distribution of royalties cannot, under the specific facts of this case,** be used to retroactively impair the obligation of the contract set forth in the 1949 lease. See *Goodale v. Fennell* (1875), 27 Ohio St. 426. To hold otherwise would emasculate both the letter and spirit of the Ohio Constitution. Therefore, we hold that pursuant to Section 28, Article II of the Ohio Constitution, R.C. 1509.27(D) may not be retroactively applied to determine distribution of royalties that are provided for in an oil and gas lease that was entered into and recorded prior to the enactment of the statutory provision. (Emphasis added).

{¶19} *Id*. at 260.

{¶20} We applied this holding to conclude use of the statutory unitization procedure under R.C. 1509.28, without Fuller's written agreement, retroactively impaired the obligation of the contract as set forth in the lease. As such, we found the oil and gas company had breached the lease and remanded the case to the trial court to determine the appropriate remedy.

{¶21} We recognize *Fuller* rests on a potentially faulty legal basis. The *Burtner* court limited its holding to the facts of the case, which related specifically to a statute regarding royalties, and not to R.C. 1509.28 regarding unitization. Further, retroactivity was inapplicable to the lease in *Fuller* because the lease was entered into after the effective date of R.C. 1509.28. Therefore, this Court's holding the statute was

retroactively applied to unconstitutionally impair the lease in *Fuller* was factually incorrect, and our reliance on *Burtner* was misplaced.

{¶22} However, setting aside the problems with the legal underpinnings of our decision in *Fuller*, we find the language in the lease in the instant case distinguishable from the language in *Fuller,* and therefore conclude a breach of contract action will not lie in the instant case.

{¶23} Ohio law recognizes two types of unitization: voluntary unitization (R.C. 1509.26) and statutory unitization (R.C. 1509.27, 1509.28). The language in the instant case is not prohibitive in nature but rather is voluntary and permissive in nature. The language allows the voluntary unitization of up to 160 acres of land. However, the language does not restrict the right of Appellee to seek statutory unitization pursuant to R.C. 1509.28 of more than 160 acres. Despite the fact R.C. 1509.28 was enacted in 1965, before the lease was executed, the lease does not refer to the statutory right of the State, in the exercise of its police power, to allow the unitization of the parcel of land, nor does it attempt to prohibit Appellee from seeking statutory unitization in units greater than 160 acres.

{¶24} In contrast, in *Fuller*, the representative of the oil company crossed out the language allowing unitization and hand wrote a prohibition on unitization absent written agreement. Such language could be construed as a prohibition on all unitization absent written agreement, statutory and otherwise. The lease in the instant case, rather than providing "no unitization" except under certain conditions, provides, "The Lessor hereby grants to the Lessee the right to consolidate the leased premises with other lands to form an oil and gas development unit of not more than one hundred sixty (160) acres." The

language grants the lessor a right to unitization rather than prohibiting unitization, and therefore addresses only voluntary unitization.

{¶25} We find the lease in the instant case is silent as to statutory unitization. Because the lease is silent as to statutory unitization, we find the trial court did not err in finding Appellee did not breach the lease by seeking statutory unitization of more than 160 acres. The trial court did not err in overruling Appellant's motion for summary judgment and granting Appellee's motion for summary judgment, dismissing Appellant's complaint for declaratory judgment and damages based on breach of the lease.

{¶26} The first and second assignments of error are overruled. The judgment of the Guernsey County Common Pleas Court is affirmed. Costs are assessed to Appellant.


By: Hoffman, J.

King, P.J. and

Gormley, J. concur